SPOONER *v.* THOMPSON AND WIFE.

*Principal and Agent.*

An agent was employed for buying goods for the principal, and selling them at the principal's store. Written articles of agreement between them stipulated that the principal would furnish capital, or authorize the agent to obtain credit on the principal's name and responsibility, for the purchase of said goods, to an amount not exceeding $4000 ; that all such purchases should be in the name of the principal, and should not exceed, in cash down and on credit, the sum specified, unless by express consent of the principal ; and that, acting within said limits, and to the extent of said capital, in the legal and proper transactions of said business, the agent's acts should be binding on the principal. *Held*, that the agent was not authorized by said agreement, to borrow money on the credit of the principal.

And if money borrowed by the agent on the credit of the principal without authority, goes into the principal's business without the latter's knowledge, and the principal has the benefit thereof, yet is not the principal liable therefore to the person of whom it was borrowed, in the absence of a promise to pay.

ASSUMPSIT for money loaned. Trial by jury, April Term, 1875, ROYCE, J., presiding.

Plaintiff sought to recover $300, claimed to have been loaned by plaintiff to defendant Lois Thompson, in November, 1867, at

which time said Lois, then Lois Post, was sole and unmarried, and owner of a store in Richford, called "The Farmers' Exchange, J. P. Cutting, Agent."

Plaintiff claimed, and his evidence tended to show, that said loan was negotiated by said Cutting, the authorized agent of said Lois, and that said Cutting borrowed the money for, and on the credit of, said Lois, and that the same was used in her business. It appeared that in May, 1867, said Lois set up a store in Richford, with said Cutting as agent, and that it was kept in operation till early the next year, under the agency of said Cutting, who, as such agent, bought and sold the goods, and managed and carried on the business of the store. A written agreement between said Lois and Cutting, concerning said store, business, and agency, was put in evidence, dated May 6, 1867, whereby it was stipulated that,

She will furnish capital, or authorize him to employ or obtain credit on her name and responsibility, for the purchase of goods to supply said store and business as aforesaid, to an amount not exceeding $4000 in all; that all such purchases shall be made in her name, and the goods shall be billed in her name, and forwarded directly to her, but that the entire purchases, including purchases in cash down, and credit, shall not exceed said $4000, unless by special consent hereafter given. * * * That while acting within the limits hereinbefore mentioned, as agent, and to the extent of capital employed in the purchases aforesaid, and the legal and proper transactions of said business, and to no other or further extent, the acts of her agent shall be binding upon her. * * * She shall not be bound for any purchases or liabilities exceeding said $4000, unless by special consent hereafter. * * * The party of the second part hereby agrees and binds himself to act as agent for the said party of the first part, in purchasing goods and selling same in said store, to the best of his ability, * * * to make no purchases or liabilites on her account, exceeding $4000, unless by her direction and consent.

Plaintiff's evidence also tended to show, that Cutting borrowed the money in question, to pay debts due from Mrs. Post for goods to supply said store, and that Cutting so informed plaintiff at the time of the loan, and that Cutting used the money in paying such debts; that $100 of said loan was, by Cutting's order, paid by

plaintiff to the firm of Holmes & Ross, on account of her indebt-edness to them ; that said firm, from May to November, 1867, had large dealings with said Cutting, agent as aforesaid, consisting of goods sold and furnished, and money and checks paid out and loaned for the business of said store ; that after said store was closed on March 10, 1868, said Cutting, acting as such agent, made a settlement with Holmes & Ross, and that for the balance found due on such settlement, Mrs. Post gave her note, and afterwards paid it ; that the $100 received of plaintiff by Holmes & Ross, was credited upon their books to Mrs. Post, and included in the settlement.

The plaintiff's evidence also tended to show, that said Cutting had in several instances borrowed money of other parties, with the knowledge and approval of Mrs. Post, to be used in business of said store, and that he was authorized by her to make this loan of plaintiff ; that subsequent to the making thereof, she promised plaintiff, on several occasions, to repay it.

Defendant's evidence tended to show, that said Cutting was not authorized to borrow any money upon her account, and that she had no knowledge that he had ever borrowed any upon her ac-count, until the claim made by plaintiff in this suit ; that none of said money was ever used in her business, nor to pay any of her debts ; that the $100 paid to Holmes & Ross on Cutting's order, was not paid on her account, but was money borrowed by said Cutting for his own private use, and was paid upon his own pri-vate account.

The defendant's evidence further tended to show, that she had no knowledge of the items of debit and credit upon the books of Holmes & Ross at the time of said settlement, and that she never promised to pay plaintiff's debt, and that prior to giving the note to Holmes & Ross, she had no knowledge of any dealings with them.

Plaintiff requested the court to charge the jury, that said writ-ten agreement conferred authority on Cutting to borrow money on the credit of Mrs. Post, and to make this loan of plaintiff. But the court refused to charge as requested, but charged that said

agreement did not confer such authority ; to which plaintiff excepted.

Plaintiff also requested the court to charge the jury, that if they found that Mrs. Post settled the claim of Holmes & Ross in which said $100 was credited, to that extent, at least, she was bound ; that if she authorized her agent to settle the account, she was holden to the same extent that she would be if she settled it herself. The court refused to so charge, but charged that if the jury found she had the benefit of the money in said settlement, and that it went into her business, she would be holden to pay it, provided they find she afterwards promised to pay it. To which refusal and charge, the plaintiff excepted.

The defendant offered the former wife of the said Cutting, and who was living with him as his wife during the time he was acting as the agent of Mrs. Post, as a witness. The plaintiff seasonably objected to her competency ; but it appearing that she had obtained a divorce from said Cutting, the court overruled the objection, and permitted her to testify, but did not permit her to testify to any conversation or communication between herself and husband. To her admission as a witness, plaintiff excepted.

The court charged the jury fully upon all the other grounds involved in the case.

————— ———, for plaintiff.

Under the provisions of their agreement, Cutting was authorized to borrow money on Mrs. Post's credit, for the purchase of goods, or to pay for goods already purchased. The agreement constituted Cutting a general agent, with power to buy goods on the credit of his principal, and to borrow money on her credit, to use her credit as might be necessary, in or to keep the store supplied with goods. The term, "for the purchase of goods," &c., used in said agreement, was not intended to limit the use of her credit to the mere act of buying goods ; but it expreses a general purpose for which her credit was to be used. 16 Vt. 95 ; 19 Vt. 202.

If Mrs. Post, with full knowledge of the Holmes & Ross account, and the $100 item, and of such facts in connection with the

loan as the plaintiff's evidence tended to show, had settled that account and taken the benefit of the $100, she would be holden to repay that sum to the plaintiff, without a subsequent promise to that effect. 30 Vt. 560 ; 42 Vt. 432 ; 43 Vt. 502. But her agent did have that knowledge, and if he settled that account, and took the benefit of the $100 for his principal, she is bound, the same as if these acts of the agent were her own, to repay the plaintiff that sum of $100; and a subsequent promise of repayment would not be necesary, to enable the plaintiff to recover that sum in this action.

Until the jury found to the contrary., the principal would be charged with knowledge of the nature of the account, and its items, and especially of all facts within the knowledge of the agent relating to the subject. Story Part. 583, 593 ; 43 Vt. 249 and 403. The jury should have, at least, been told that unless such knowledge on the part of Mrs. Post was negatived by their finding, she would be holden in this action for the $100 if she had the benefit of it in the settlement. 21 Vt. 129. If Mrs. Post, or her agent, with actual or presumptive knowledge, took the benefit of the $100 in the manner claimed, an equity arises in favor of the plaintiff, from which the law will infer a promise of repayment.

*E. H. Powell* and *Wilson & Hall*, for defendants.

The written contract between Mrs. Thompson and Cutting, did not confer upon him any authority to borrow money upon her credit. This contract should receive a strict interpretation, and the authority conferred by it is not to be extended beyond that which is given in terms, or which is necessary and proper for carrying the authority so given into effect. Story Agency, ss. 68, 69, 72, 76, 77, 83 ; *Cochrane* v. *Whipple*, 33 Vt. 169 ; *Webber* v. *Williams College*, 23 Pick. 302.

Plaintiff's request to charge with reference to the one hundred dollars claimed to have been credited in Mrs. Post's account with Holmes & Ross, was properly disregarded. The theory of the request is, that the mere settlement of Holmes & Ross' account, was sufficient to charge her with knowledge of the credit on their books and the fact that it was borrowed of plaintiff; but such

position cannot be maintained upon reason or authority. Dunlap's Palcy Agency, ss. 171, 172 ; Story Agency, s. 253, notes 1 & 2 ; *Barton & Co.* v. *Pittsford*, 44 Vt. 371 ; *Woodward & Perkins* v. *Barnes*, 43 Vt. 330 ; *Underwood* v. *Hart*, 23 Vt. 120 ; *Bell* v. *Cummings*, 3 Pet. 81 ; *Grant* v. *Beard*, 50 N. H. 129 ; *Bank of Orleans* v. *Fassett*, 42 Vt. 432 ; *Seymour* v. *Wickoff*, 10 N. Y. 224.

The former wife of Cutting was a competent witness for the purpose for which she was improved, and to the same extent that Cutting himself would be permitted to testify. *Williams* v. *Baldwin*, 7 Vt. 503 ; *Edgell* v. *Bennett & Lowell*, 7 Vt. 534 ; *Coffin* v. *Jones*, 13 Pick. 445 ; *Smith* v. *Potter*, 27 Vt. 304 ; 1 Greenl. Ev. ss. 338, 342.

The opinion of the court was delivered by

REDFIELD, J. The plaintiff claims to recover for money loaned to the defendant Lois Thompson, while sole and unmarried.

It is not denied that J. P. Cutting was the agent of said Lois, in buying and selling goods at her store in Richford, and that said Cutting, acting as such agent, borrowed money of the plaintiff. The plaintiff claims in argument, that the written articles of agreement authorizes Cutting to borrow on the credit of said Lois. The written stipulations provide that "she will furnish capital, or authorize him [Cutting] to employ or obtain credit on her name and responsibility, for the purchase of goods to supply said store and business as aforesaid, to an amount not exceeding $4000." That "the entire purchases, including purchases for cash down, and credit, shall not exceed four thousand dollars." "That while acting within the limits herein before mentioned, as agent, and to the extent of capital employed in the purchases aforesaid, and the legal and proper transaction of said business, and to no other or further extent, the acts of her agent shall be binding on her." The agency of Cutting was express and limited, and, we think, conferred no authority to *borrow money* on her credit.

II. It was claimed that a portion of the money loaned by the plaintiff was paid by Cutting to Holmes & Ross, for purchases, made of said firm to supply said store, and that defendants thus

had the benefit of it. This was denied by the defendants. It seems that Cutting settled the account with Holmes & Ross, and that said Lois gave her note for the balance found due, and afterwards paid it. The plaintiff requested the court to charge the jury, "that if Mrs. Post [now Lois Thompson] settled the claim of Holmes & Ross on which the $100 borrowed of the plaintiff was credited, to that extent, at least, she is bound." The court refused so to charge, and did charge, that if the money went into her business, and she had the benefit of it, "she would be holden to pay it, provided the jury find that she afterwards promised to pay it." The defendant's evidence tended to show that Mrs. Post had no knowledge that any money borrowed of the plaintiff went to pay Holmes & Ross ; or that any such money appeared on the books of said store ; and denied that any such money went for her benefit, or into the business of said store. If Cutting borrowed money of the plaintiff on the credit of Mrs. Post, without her authority, and paid a part of it to Holmes & Ross without her *knowledge*, it could give the plaintiff no right of action against her. She could not be made the debtor of the plaintiff without her *consent*. If Cutting borrowed money in her name, without authority, and she, having knowledge of the fact, and that the money went into her business, and she had the benefit of it, she thereby adopts the transaction, and makes it her own. The request to charge the jury, by the plaintiff, was, therefore, properly refused, and the charge of the court, so far as it is stated, is sound law. And the case does not show that the court omitted to charge properly on the subject of adopting the acts of Cutting, and ratifying them by allowing them to go to her benefit with full knowledge of the transaction. The legal inference is, that the court gave correct instruction to the jury as to every phase of the case, and it is the duty of the excepting party to show affirmatively that there was error.

III. We see no reason why the divorced wife of Cutting was not a legal witness, and this objection is not urged in the argument.

Judgment affirmed.