FRED WASHBON, *as Grand Master, etc., et al., Appellants,* v. THE STATE BANK OF HOLTON, *Appellee.*

No. 17,435.

FRED WASHBON, *as Grand Master, etc., et al., Appellees,* v. THE STATE BANK OF HOLTON, *Appellant.*

No. 17,783.

SYLLABUS BY THE COURT.

1. APPEAL—*When Question Not Reviewable.* Certain evidence was admitted over the objection of plaintiffs. No complaint of the ruling was made in the motion for a new trial. *Held,* that the question can not be raised in this court.

2. ——— *Transcript—Evidence—Documents—When Part of the Record.* When there is complaint by one party that the abstract or transcript does not contain certain material and important evidence, and such evidence is contained in documents which were marked and certain portions offered in evidence and such documents filed with the clerk of the trial court, thereby making the admitted portions a part of the record under section 575 of the civil code, this court may, under section 576, direct the forwarding of such documents for examination, and may properly examine them when voluntarily forwarded at the instance of the other party.

3. AGENCY—*Allegations of "Appointment or Authority"—Statute Construed.* "Appointment or authority" as used in section 110 of the civil code means a right to act for another, and an allegation to the effect that one has full right, power and authority to act for himself is not taken as true when not denied under oath.

4. DEPOSITS—*Application by Depositor.* Directions by a depositor as to how a certain deposit shall be credited, when a part of the transaction or accompanying it, may be shown by the banker, after the decease of the depositor. But such directions given after the credit has been made, and given for the purpose of changing a credit theretofore properly made, may not thus be shown.

5. TRUST FUNDS—*Election of Remedies—Filing Claim in Probate Court—No Estoppel.* The grand treasurer of a fraternal order kept his official account in a bank which bank is charged by the order with diverting a portion of its funds on deposit to the payment of a private debt of the grand treasurer. The order had already filed with the probate court a claim against

the estate of the grand treasurer and had the same allowed and classified. *Held,* that such proceeding in probate court is not a bar to this action; that the order may consistently pursue both remedies until there is one satisfaction.

Appeals from Jackson district court. Opinion filed February 10, 1912. No. 17,435 reversed. No. 17,783 affirmed.

*M. A. Bender, T. F. Garver,* and *R. D. Garver,* for Fred Washbon *et al.*

*A. E. Crane, F. T. Woodburn, E. D. Woodburn, I. T. Price,* and *Charles Hayden,* for The State Bank of Holton.

The opinion of the court was delivered by

WEST, J.: The officers of the Grand Lodge of Masons sued the bank to recover $3045.20 alleged to have been knowingly appropriated by it from the funds of the Grand Lodge to pay a personal debt owed by the grand treasurer, Sarbach, to the bank. Sarbach had made a note to cover an overdraft, and on Saturday, March 6, 1908, he sent to the bank by a messenger a personal check payable to himself (Sarbach) for $4000. The assistant cashier credited the amount of the check to Sarbach's account as grand treasurer. Monday Sarbach called up J. Q. Myers, the president, and asked if he had noticed the deposit. Myers said he had not, but looked it up and told Sarbach it had been credited to his account as grand treasurer, and Sarbach said, "It was? Well, you know what I want done with it; you know that I want to pay that note," and directed Myers to charge his note up to the account, and this was done. The plaintiffs claim that the lodge should recover this from the bank on the ground that having been credited to the lodge fund the proceeds of the check became its property.

Complaint is made that Myers was permitted to testify to the conversation with Sarbach, but no error was

assigned upon this in the motion for a new trial and the question can not be raised here for the first time.

It is claimed that the twelfth, thirteenth and four-teenth findings of fact are not supported by the evidence. These are to the effect that the credit was made to the grand treasurer's account by mistake and con-trary to Sarbach's intention, that the check for $4000 was the individual property of Sarbach, who intended his note to be paid out of it, and that he did not know the credit had been made until the 8th, when he, having full right to do so, directed that the amount of his note be taken out, leaving a balance in the grand treasurer's account of $954.60 upon the books of the bank. It is claimed that finding No. 23 is contrary to the evidence. This finding is that the evidence does not show whether on the 6th, 8th or 9th of March Sarbach was short in his accounts or whether he in fact had on hand the full amount of which he was rightfully chargeable to his account as grand treasurer. The abstract does not con-tain the evidence, and it is only by going to exhibits introduced in evidence and not set out in the abstract or transcript that it could be ascertained whether this finding is or is not supported. No fault is found in the brief with any other findings than 12, 13, 14 and 23, although in the assignment of errors numbers 5 and 16 were complained of. Findings 2 and 3, of which there is no complaint, are to the effect that on February 20, 1909, checks or orders amounting to $2518.94 were drawn on Sarbach and $1900 thereon paid between that and March 3 out of deposits in the bank, and that it does not appear from the evidence that this had been refunded prior to the debiting of his account with the amount of his note with J. Q. Myers. Finding number 4 is that Sarbach had no instructions or direc-tions where to keep the lodge funds, and that the evi-dence does not show whether he had a deposit as grand treasurer elsewhere than in the city of Holton or not. The twenty-first finding, of which no complaint is

made, is that from January 9, 1908, to March 6, 1909, amounts aggregating $15,391.84 were deposited in the bank by Sarbach as grand treasurer and that the evidence does not show that either of such items was other than Sarbach's individual fund, except that on January 7, 1908, he received a remittance from the grand secretary amounting to $3359.50 and on January 8, $4424.10, and that after such remittances no deposit was made by him as grand treasurer in the bank.   The twenty-fifth finding, not complained of, is that it does not appear that Sarbach as grand treasurer had any right or authority to overdraw his account and there was no necessity for any overdrafts for the payment of lawful demands of the lodge, there being in the grand treasurer's hands at all times sufficient moneys of the lodge to meet such demands.   Some of these findings are none too clear as to whether they refer to Sarbach's account with the lodge or to his account with the bank.   However, were it not for the attack on finding No. 23 their lack of perspicuity might not be important.

It is vigorously asserted and denied that we can look beyond the transcript or abstract to ascertain the support or lack of support for No. 23.   It appears that certain documents were referred to and indicated portions of them introduced in evidence, though not copied into the transcript.   While, generally, the transcript should contain all the evidence, so that a counter abstract can, if necessary, be prepared therefrom, still sections 574 and 575 of the civil code provide that the duly certified stenographic notes of the testimony and proceedings shall become a part of the record in the cause, and that "all papers and exhibits filed with the clerk" (Civ. Code, § 575) shall be deemed a part of the record.   Plaintiff asserts that pursuant to the provisions of the next section (Civ. Code, § 576) these portions of the record are submitted in order to settle the dispute as to what the record really shows.   As under this section we could send for and examine these docu-

ments, we certainly may examine them now that they
have been produced by the plaintiff. An examination
shows that Sarbach was short in his account with the
grand lodge many thousands of dollars on all of the
dates named in finding No. 23. This was one of the
most serious questions in the case—largely a con-
trolling one—and this finding, in the face of the evi-
dence actually before the court, can not be permitted to
stand. As another trial will be necessary, it is proper
to say that the testimony of Myers touching the con-
versation with Sarbach was or was not competent, de-
pending on the real facts. If Sarbach simply sent the
check to the bank by a messenger intending but not
directing the amount to be credited to his personal ac-
count, and the credit was by mistake made to his ac-
count as grand treasurer, then upon discovering this
fact he had a right to direct the credit to be made in
accordance with his original intention. But if the
credit was properly made and afterward Sarbach con-
cluded for the first time to have it changed, then his
conversation was not a part of the original transaction,
so as to be a part of the *res gestæ,* and was incom-
petent.

The second count of the answer alleged that at the
time of depositing the check it was Sarbach's inten-
tion that so much of the proceeds as might be sufficient
should be used to pay off his note, and that by mis-
take and without his knowledge or authority the full
amount of the check was credited to the grand treas-
urer's account, that upon learning that such entry had
been made Sarbach directed that his note be paid there-
out, "then having full and absolute right, power and
authority so to do."

To this an unverified general denial was filed, and it
is argued that the allegation of power and authority
must therefore be taken as true under section 110 of
the civil code. We do not think this was an allegation
of any power or authority by way of agency such as is

manifestly contemplated by this section. The more natural construction of the language would be that it was an assertion in effect that as Sarbach had directed how his credit should be made and the check was his own fund he therefore had full power and authority by way of ownership, and not by way of agency, to direct that his note be paid.

Case No. 17,783, submitted and argued with the one we have been considering, involves but one question. The third count of the answer in case No. 17,435 set forth the death of Sarbach, the appointment of an administratrix, the receipt by her of assets amounting to over $40,000 liable to payment of claims of creditors, and that on October 30, 1909, plaintiffs filed in the probate court their verified claim against the State Bank amounting to $16,358.99, which claim included the claim sued upon by plaintiffs in this action, that such claim was allowed in full by the probate court and assigned to class 5, such allowance being still in full force, unreversed and unappealed from. That by reason thereof the plaintiffs as general creditors, with full notice, having thus presented their claim and had it allowed, were barred and estopped from asserting against this defendant this claim which is included in the one allowed by the probate court. To this count of the answer plaintiffs demurred and the demurrer was sustained, and an appeal from this ruling was docketed in this court as case No. 17,783.

It is argued by the defendant that by presenting their claim to the administratrix and having it allowed and assigned to the fifth class the plaintiffs elected to pursue a remedy inconsistent with their action against the bank; that they thereby elected to treat their claim as a debt against the estate of Sarbach as for a conversion, and that their alleged right of action against the bank is based upon the theory that they have not parted with ownership of the proceeds of the check in controversy, a position inconsistent with the claim that

the estate is indebted to them by reason of the disposition Sarbach made of this check. Plaintiffs reply that if their money was wrongfully used by Sarbach any one knowingly participating in such appropriation is legally liable with him; that all parties connected with the wrongful act may be proceeded against until there is one satisfaction. The facts fairly fall within and the case is controlled by *Sweet v. Bank,* 69 Kan. 641, 77 Pac. 538. There the writer earnestly but vainly contended that by filing their claim with the receiver the plaintiffs had elected a remedy inconsistent with their subsequent action against the corporation's officers and agents. It was held however, that the remedies were not inconsistent, for the reason that there was no controversy as to the ownership of the trust property, no waiver of plaintiff's claim of ownership, no ratification of the acts of the defendants, that both remedies could be consistently pursued until there was one satisfaction. So here, the plaintiffs have not waived their claim of ownership of the fund sought to be recovered, but are pursuing the estate of the one who misappropriated it and the bank who paid out the money with alleged knowledge of its trust character. This they may do until from one source or the other their claim, if rightful, shall be satisfied.

The judgment in case No. 17,435 is reversed, with directions to grant a new trial.

The order sustaining the demurrer in case No. 17,783 is affirmed.

MASON, J., not sitting.