CHARLES BATEMAN, *Appellee,* v. CARRIE SARBACH, as Administratrix, etc., et al., *Appellees,* and THE MOST WORSHIPFUL GRAND LODGE OF ANCIENT, FREE AND ACCEPTED MASONS OF THE STATE OF KANSAS et al., *Appellants.*

No. 17,957.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE — *Executed by Grand Lodge Treasurer without Authority—Grand Lodge Not Liable.* The treasurer of the grand lodge of Masons of Kansas, claiming to have authority to borrow money for the grand lodge, procured a loan from the plaintiff and executed a promissory note therefor, signed by him as such treasurer. He had no authority to borrow the money or to execute the note. He was a defaulter and used the proceeds of the note to conceal his defalcation. *Held,* that the grand lodge was not liable in an action upon the note even if it were shown that part of the proceeds of the loan was applied in payment of its obligations, for the reason that it had no knowledge or notice of the unauthorized acts at the time the proceeds were received.

2. ESTOPPEL—*Conduct of Principal Not Sufficient to Constitute Ratification of Unauthorized Acts of Agent.* The grand lodge, without knowledge or notice of the loan or the execution of the note, commenced an action against the bank where the treasurer had kept his account, to recover a sum of money which it claimed belonged in his account as treasurer and which the bank had applied in payment of his individual debt due the bank. Shortly afterwards a surety company which had bonded the treasurer paid the grand lodge the full amount of the defalcation and took an assignment of its claim and cause of action against the bank. In an action against the grand lodge upon the note executed to plaintiff the court charged the jury that if after discovering the facts respecting the execution of the note the officers of the grand lodge aided or assisted the surety company in the further prosecution of the action against the bank such conduct on their part would constitute a ratification of the unauthorized acts of the treasurer and render the grand lodge liable upon the note. *Held,* error, for the reason that upon payment of the loss by the surety company it became subrogated to the right of the grand lodge to assert a claim against the bank; and that the grand lodge had no further interest in or control over the cause of action against the bank or any power to prevent the further prosecution thereof.

Appeal from Jackson district court. Opinion filed May 10, 1913. Reversed.

*M. A. Bender*, of Holton, *T. F. Garver*, and *R. D. Garver*, both of Topeka, for the appellants.

*J. J. Schenck*, of Topeka, *E. R. Sloan*, and *Guy L. Hursh*, both of Holton, for the appellees.

The opinion of the court was delivered by

PORTER, J.: From February, 1903, until September 11, 1909, when he died, Albert Sarbach was grand treasurer of the grand lodge of Masons of Kansas. He kept an account as treasurer in the State Bank of Holton. At the time of his death he owed the grand lodge about $16,000, and for more than two years he had been in default in his accounts. On March 5, 1909, upon the representation that he was authorized to borrow money for the grand lodge, he procured from the plaintiff, Charles Bateman, a loan of $4000 upon a promissory note due one year after date, signed by himself as grand treasurer. In fact, he had no such authority. Although he should have had on hand at that time $22,000 of lodge moneys, his account at the bank as treasurer was overdrawn $100. Bateman brought suit upon the note, and this is an appeal by the grand lodge from a judgment against it in plaintiff's favor for $4822. Other parties were joined as defendants but they have no interest in the appeal.

Some additional facts require statement in order to present the questions of law which are deemed controlling. It appears that on April 6, 1909, Sarbach deposited Bateman's check for $4000 in the bank and his account then showed a balance of $3900 to his credit as grand treasurer. On March 8 the bank, with Sarbach's knowledge and consent, applied $3045.20 of this amount to the payment of his individual note past due, which the bank held, leaving a balance to his account as treasurer of $954.80 which soon afterwards

was checked out by Sarbach, for what purpose does not appear. On December 30, 1909, after Sarbach's death, the grand lodge brought suit against the bank in the district court of Jackson county to recover the sum of $3045.20 on the ground that the bank had wrongfully appropriated its funds in payment of Sarbach's personal indebtedness. While that action was pending the grand lodge received from the Fidelity and Casualty Company of Maryland, surety on Sarbach's bond, the full amount of his defalcation, and in January, 1910, assigned to that company its claim and cause of action against the bank. The answer of the bank was filed April 26, 1910, in which it was alleged that the money applied on Sarbach's debt was his individual money, and the answer set out a copy of Bateman's check given at the time of the loan, which was payable to Sarbach individually and which he had deposited in the bank. The answer contained no reference to plaintiff's loan to Sarbach or the execution of the note.

At the time this action was tried the suit in the name of the grand lodge as plaintiff against the State Bank of Holton was still pending. A subsequent trial resulted adversely to the casualty company and the judgment in favor of the bank was appealed to this court, and reversed. (*Washbon v. Bank,* 86 Kan. 468, 121 Pac. 515.)

The liability of the grand lodge in this action upon the note executed by Albert Sarbach turns wholly upon the question of ratification. The court properly instructed the jury that Sarbach had no authority to borrow money for the grand lodge or to execute the note, and that there was no liability on its part, "unless with full knowledge of the transaction such Lodge, through its proper officers, which in this case would be the officers composing the Council of Administration, afterwards ratified such act."

The evidence shows, and the jury in their answers

to special questions find, that at the time the suit was commenced against the bank to recover the $3045.20 none of the officers of the grand lodge knew of the loan by the plaintiff to Sarbach. The court, however, instructed the jury that even though they may have had no notice of the fact, yet if after the filing of the petition in that action they knew that the $3045.20 for which the suit was brought was a part of the money obtained by Sarbach from the plaintiff, and thereafter they proceeded with the trial of that case, or aided or assisted the casualty company in proceeding with it, or thereafter claimed said sum either for the grand lodge or for or in behalf of any assignee thereof, such acts on behalf of the council of administration or any member thereof would constitute a ratification of the acts of Sarbach in procuring the loan and would entitle the plaintiff to recover.

There was evidence to the effect that some of the officers of the grand lodge were witnesses on behalf of the casualty company at the trial of the suit against the bank.

The jury returned, among other answers to questions submitted by the defendant, the following:

"3. Did Albert Sarbach as Grand Treasurer have any authority to borrow money, or to execute the note in question? Answer. Yes. By ratification.

"4. Did the Grand Lodge, or its officers, have any notice or knowledge before July, 1910, when this suit was commenced, that Albert Sarbach had given such note to Bateman? Answer. Yes.

"5. If the last question is answered in the affirmative then state when and how they got such notice or knowledge. Answer. On or about April 26, 1910, from answer filed by State Bank of Holton.

"6. What if any thing did the Grand Lodge or its officers do, after they had notice or knowledge of the giving of the note in question to Bateman, to adopt and ratify such act of Sarbach? Answer. By permitting the suit to continue against the State Bank.

"14. Did the Fidelity and Deposit Company of

Maryland, the surety on Sarbach's bond as Grand Treasurer, about January, 1910, pay to the Grand Lodge the amount of Sarbach's shortage, with the understanding and agreement that the several claims against Sarbach's estate and others should be assigned to said company? Answer. Yes.

"15. Was the written assignment which has been introduced in evidence executed about January 31st, 1910? Answer. Yes.

"16. After such assignment was the further prosecution of the suit against the State Bank of Holton, in this court, directed and controlled by said Fidelity and Deposit Company? Answer. Yes, jointly with the aid of the Council of Administration of the Grand Lodge.

"17. What if any thing did the Council of Administration do in the prosecution of the suit against the State Bank of Holton after the assignment to the Fidelity and Deposit Company? Answer. Voluntary assistance."

They also returned answers to several questions submitted by the plaintiff, one of which follows:

"33. Did the Council of Administration of said Grand Lodge, after learning the circumstances of the borrowing of said sum of $4000.00 from the plaintiff, and the disposition made of the check given by plaintiff to said Albert Sarbach for the sum so borrowed of plaintiff, thereafter continue to prosecute said action against said State Bank of Holton and thereby claim a portion of the proceeds of such check? Answer. Yes."

Our conclusions may be briefly stated. The court was in error in charging the jury that, although the council of administration prior to bringing the action against the State Bank of Holton might not have known that Sarbach, purporting to act as grand treasurer, had borrowed the money and executed the note, and that the $3045.20 applied on his individual indebtedness to the bank represented a portion of the $4000 borrowed from plaintiff, yet if the—

"Council of Administration thereafter proceeded with the trial of said case, or aided or assisted in the prosecution thereof in the name of said Council of Ad-

ministration or induced, aided or assisted any other person or corporation in proceedings with said action, or thereafter claimed said sum of $3045.20 or any interest thereon either for themselves or for or in behalf of any assignee of said Council of Administration, then I instruct you that such acts on behalf of said Council of Administration, or any member thereof, would constitute a ratification of the acts of the said Albert Sarbach in so procuring said loan of $4000, from this plaintiff, and the execution of the note in controversy in this action, and your verdict should be for the plaintiff as against the defendant, the Council of Administration of said Grand Lodge."

We suppose it will hardly be contended that after the assignment of its claim and cause of action to the surety company the grand lodge or any of its officers had the right to control the prosecution of the action against the bank. The fact that some of its officers were called as witnesses in behalf of the surety company could not bind the grand lodge, nor would it amount to a ratification of what Sarbach had done even though the witnesses voluntarily attended the trial and testified. The surety company, having paid to the grand lodge the debt which the latter claimed the bank owed to it, became subrogated to whatever right the grand lodge had to look to the bank for payment. This right of subrogation the law gave to the surety company, and it doubtless held the right likewise by virtue of its contract of insurance. Assume that the grand lodge had a valid claim against the bank and also held indemnity from the surety company for the loss, the right of subrogation manifestly would be of no value whatever if it were destroyed by the very act which created it, or if it could be swept away by a mere attempt to enforce it. By payment of the premium for insurance the grand lodge acquired the right to be indemnified by the surety company against loss occasioned by the misfeasance of Sarbach, but the law obliged it to transfer to the surety company any claims

for reimbursement it might hold against Sarbach or against third persons. The jury have found that there was no ratification by the grand lodge of the execution of the note by Sarbach until long after it had commenced the suit against the bank, and, in fact, long after it had been reimbursed for its loss by the surety company. But following the erroneous instruction, they have found ratification in the failure of the grand lodge to have the suit against the bank dismissed after discovering the facts respecting the loan and the execution of the note and because it aided and assisted in the further prosecution of the suit by its assignee. We are at a loss to discover in what way the grand lodge could have prevented the surety company, the real party in interest, from proceeding further in that suit, if it had desired to prevent it. Having parted with all interest it had in the claim and cause of action before the discovery of the facts respecting the loan of the money and the execution of the note, it must be manifest that its failure to do something it lacked the power to do could not amount to a ratification of the unauthorized acts of Sarbach nor affect the rights of the real party in interest in the present action. It may be added that, so far as the record discloses, there is not the slightest evidence that the grand lodge or any of its officers acted jointly with the surety company in the prosecution of the action against the bank, save and except the admitted fact that some of the officers were witnesses for the plaintiff and attended the trial voluntarily.

Aside from the money applied by the bank upon the individual note of Sarbach, there was a balance of $954.80 of the proceeds of the note which went into his account as treasurer. If it were shown that the grand lodge received the benefits of this by Sarbach's payment of warrants drawn against him, the plaintiff would not be entitled to recover that sum from the grand lodge without proof that the money was received

Bateman v. Sarbach, Adm'x.

with knowledge of the facts. Notice or knowledge on the part of the principal is the test of liability in such a case. It can not be that every time a principal receives money due him from an agent, he is put upon inquiry to discover whether the money was not obtained from some one by the unauthorized act of the agent. The doctrine of special agency requires the person dealing with the agent to ascertain at his peril that the agent has kept within his special authority, and does not require the principal at his peril to inquire whether the agent has gone beyond it. (*Roberts v. Rumley,* 58 Iowa, 301, 12 N. W. 323.) A case in point is *Craft v. South Boston Railroad,* 150 Mass. 207, 22 N. E. 920, where the treasurer of a street railway company purporting to have authority to borrow money for the company procured a loan from the plaintiff and gave her his note as treasurer. He had no authority to borrow the money or to execute the note. He was a defaulter and used the money to conceal his defalcation and paid it on the debts of the company. It was held that the company was not liable either upon the note or for money had and received, for the reason that the company had no knowledge or notice of the unauthorized acts at the time the money was received.

"If money borrowed by the agent on the credit of the principal without authority, goes into the principal's business without the latter's knowledge, and the principal has the benefit thereof, yet is not the principal liable therefor to the person of whom it was borrowed, in the absence of a promise to pay." (*Spooner v. Thompson and Wife,* 48 Vt. 259, syl.)

The jury have found ratification, but the particular facts upon which that finding rests have likewise been found and are undisputed. It therefore becomes wholly a question of law whether the special facts are sufficient to show ratification. (*Penrose v. Cooper,* 88 Kan.

210, 128 Pac. 362.) Upon the special findings the defendant was entitled to judgment.

The judgment is therefore reversed with directions to enter judgment for the defendant.

MASON, J. not sitting.