No. 18,659.

THE FIDELITY AND DEPOSIT COMPANY OF MARYLAND (substituted for FRED WASHBON et al.), *Appellant*, v. THE STATE BANK OF HOLTON, *Appellee*.

SYLLABUS BY THE COURT.

1. BANK DEPOSITS—*Application Directed by Depositor—Finding —Evidence.* The evidence examined and held that a special finding of fact determinative of the controversy is sustained by the evidence.

2. SAME. The fourth paragraph of the syllabus of the case of *Washbon v. Bank,* 86 Kan. 486, 121 Pac. 515, and corresponding portions of the opinion followed.

Appeal from Jackson district court; OSCAR RAINES, judge. Opinion filed March 7, 1914. Affirmed.

*M. A. Bender,* of Holton, *T. F. Garver,* and *R. D. Garver,* both of Topeka, for the appellant.

*A. E. Crane, F. T. Woodburn, E. D. Woodburn, I. T. Price,* and *Charles Hayden,* all of Holton, for the appellee.

The opinion of the court was delivered by

Burch, J.: The question in this case is one of fact. Did a bank deposit when made become a part of the funds of the Grand Lodge of Masons of Kansas? The solution depends upon the answer to another question. What was the intention of the depositor?

The deposit was made in the State Bank of Holton by Albert Sarbach, who was treasurer of the grand lodge, and who had an account in the bank as such. Officially he was a defaulter in a large sum, more than $20,000, and his account as grand treasurer was overdrawn. Personally he was indebted to the bank on a demand note for $3000, given to take up an overdraft occasioned by his appropriating the proceeds of a shipment of grain which should have come to the bank. The deposit consisted of a check for $4000 drawn in favor of Sarbach personally by C. D. Bateman. It was placed to his account as grand treasurer on March 6. The next day was Sunday. On March 8, after a telephone conversation between Sarbach and the president of the bank, the note was paid out of the deposit. In an action instituted on behalf of the grand lodge against the bank, and prosecuted by a substituted plaintiff, the district court found specially that Sarbach did not intend that the check should be credited to his account as grand treasurer, but did intend that so much of it as might be necessary should be applied to the payment of his note, which with interest amounted to $3045.20. Judgment was rendered accordingly. The contention is that the special finding of fact is without support in the evidence. Features of the case were considered in *Washbon v. Bank,* 86 Kan. 468, 121 Pac. 515, where the principal facts are stated and the telephone conversation referred to is given.

Sarbach sent the check to the bank by a messenger, who did not testify at the trial. The deposit slip is lost. The employee who entered the credit on the

bank's books did not testify. The circumstances are such, however, that no inferences pertinent to the ultimate fact can be drawn from the absence of evidence from these sources.

The check was given on account of a loan made by Bateman to Sarbach secured by Sarbach's note as grand treasurer. The note was also signed by Sarbach personally and by a firm of which he was a member. It does not appear that Sarbach was pressed for funds as grand treasurer. His defalcation was not known, and bills of the grand lodge were being taken care of as presented. After the note to the bank was deducted from his account Sarbach had to his credit as grand treasurer $710.83. There is nothing to indicate that when the loan was procured Sarbach anticipated that he would presently need more money as grand treasurer than the remainder left after paying the bank. On the other hand, the bank was urging payment of its note. The bank was dissatisfied with Sarbach's conduct in creating the overdraft, and insisted on prompt reimbursement. Sarbach said he would soon have the money. The money not being immediately forthcoming, he was told that the matter could not be carried in the form of an overdraft, and he gave the demand note, assuring the bank that it would be paid in a few days. The bank kept pressing for payment, Sarbach kept promising to pay, and a few days before he procured the loan from Bateman told the bank he was raising the money and would soon have it. Here is evidence that the loan was obtained from Bateman to secure relief from the importunateness of the bank.

Before making the loan Bateman consulted the president of the bank with reference to whether or not the names on the note offered by Sarbach would be good security. In this conversation Bateman rehearsed the reasons which Sarbach had given him for desiring the loan. Sarbach had said that he was behind in his account with the bank, and that he was raising some

money for the grand lodge for some improvements at the Masonic Home, and so was behind with the bank. Bateman and the president of the bank do not agree upon what occurred at this interview, but the finding of the trial court indicates that the version favorable to the bank was adopted.

This being the evidence as to the state of affairs when the deposit was made, it can not be said that a definite purpose existed in Sarbach's mind to augment his account as grand treasurer to the full extent of the Bateman loan and leave the bank unpaid, and the telephone conversation referred to became relevant and material.

"Monday Sarbach called up J. Q. Myers, the president, and asked if he had noticed the deposit. Myers said he had not, but looked it up and told Sarbach it had been credited to his account as grand treasurer, and Sarbach said, 'It was? Well, you know what I want done with it; you know that I want to pay that note,' and directed Myers to charge his note up to the account, and this was done. . . . If Sarbach simply sent the check to the bank by a messenger intending but not directing the amount to be credited to his personal account, and the credit was by mistake made to his account as grand treasurer, then upon discovering this fact he had a right to direct the credit to be made in accordance with his original intention. But if the credit was properly made and afterward Sarbach concluded for the first time to have it changed, then his conversation was not a part of the original transaction, so as to be a part of the *res gestæ*, and was incompetent." (*Washbon v. Bank*, 86 Kan. 468, 469, 472, 121 Pac. 515.)

Other findings of the district court are attacked, but the one discussed is determinative of the case. It is sufficiently sustained by the evidence, and the judgment of the district court is, therefore, affirmed.

Mr. Justice MASON not sitting.