## No. 19,182.

THE LINSCOTT STATE BANK, *Appellant*, v. THE FIDEL-
ITY AND DEPOSIT COMPANY OF MARYLAND, *Appellee*.

### SYLLABUS BY THE COURT.

JUDGMENT—*Against Joint Tort-feasors—Judgment Paid by One
Party—Not Entitled to Recover Dividend Paid by Insolvent
Estate of Joint Tort-feasor.* An officer of a grand lodge died
a defaulter and his administratrix paid a twenty-five per
cent dividend on the amount of the defalcation. A bank was
found to have knowingly permitted such officer to pay to it
his individual debt with grand lodge funds and was thereby
held jointly liable with the estate for the amount of such
payment, and paid a judgment recovered therefor by the
creditor, such judgment being paid after the dividend had
been paid. Thereafter the bank sued the creditor to recover
twenty-five per cent of such judgment on the theory that the
estate having paid such per cent thereof the creditor could
be compelled to account therefor to the bank. *Held*, that the
creditor had a right to look to the bank for the amount of the
judgment and to the estate for the remainder of the defalca-
tion, and that the bank can not require the dividend to be
applied to its portion of the joint liability.

Appeal from Jackson district court; OSCAR RAINES,
judge. Opinion filed January 9, 1915. Affirmed.

*William B. Sutton*, and *William B. Sutton, jr.*, both
of Kansas City, for the appellant.

*T. F. Garver*, and *R. D. Garver*, both of Topeka, for
the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff in its petition alleged that
about June 30, 1911, the administrative council of the
Grand Lodge of Masons of the state of Kansas recov-
ered a judgment against the plaintiff for $6760 and
costs; that prior to such recovery the defendant com-
pany had succeeded to the rights of the plaintiff in the
action just mentioned; that the judgment was collected

Bank v. Deposit Co.

in full and was for a certain sum composed of two items, $4465.76 and $934.09, making $5399.85, and interest, being moneys belonging to the grand lodge which the grand treasurer had paid to the plaintiff bank on account of his individual indebtedness to it, and which sums were a part of the grand lodge funds which the defaulting grand treasurer should have had in his hands at the time of his death; that the grand treasurer's administratrix had been presented with a claim by the grand lodge for the total amount of the defalcation, which claim was allowed by the probate court and assigned to the fifth class; that afterwards the estate paid to the defendant a dividend of twenty-five per cent of the total claim of the grand lodge; that the estate was primarily liable for the whole of the shortage, which was $16,359.99 and the interest thereon, which included the two items making up the principal for which judgment had been recovered against this plaintiff; that the twenty-five per cent dividend included $1339.18 of such principal and accrued interest, amounting to $1455.88, and judgment was asked for this amount with interest. A demurrer to the petition was sustained, and the plaintiff appeals and contends that the petition shows on its face that the shortage was composed of separate and distinct items standing on their own bases; that the liability of the plaintiff was secondary and not primary, and simply that of surety on the debt of the former grand treasurer to the extent only that the plaintiff had profited by the payment of his individual debts with grand lodge funds; that it was under obligation to make good only the amount so received if the grand treasurer or his estate did not, but that whenever the estate made good a portion thereof the plaintiff could be held liable for the balance only. The defendant denies that the grand lodge claim against the estate was made up of separate items and asserts that it simply represents a total of the grand treasurer's misappropriations and constitutes one legal

claim against the estate which could be satisfied only by full payment; that "To the extent of the judgment obtained against it, the appellant was a party to this misappropriation and was liable for that amount. Both Sarbach and the bank were joint wrongdoers and each liable to the grand lodge for the full amount of the misappropriation which resulted from their joint acts;" that the grand lodge or its assignee could rightfully pursue the remedies which were adopted until the entire amount of the defalcation had been paid; that whether or not the plaintiff could, after the payment of the judgment against it, recover from the estate twenty-five per cent thereof, it could not diminish the rights of the grand lodge or of the defendant its assignee.

Thus we have presented a most interesting law question and one so novel that it may have to be decided more upon principle than upon precedent.

It is apparent and indeed it is conceded that the bank could be held liable for only such portion of the entire shortage as it was instrumental in causing, which was $5399.85. Had this sum with interest been made good before the grand lodge's claim was filed with the administrator, such claim instead of being for $16,359.99 would have been the difference, and the grand lodge or its assignee could look no further to the plaintiff bank. It is equally clear that the entire defalcation constituted one claim for which the estate was primarily liable, whether made up of one or many items, and that to the extent of $5399.85 and interest the plaintiff was equally liable, regardless of whether such sum represented one or more items. In other words, in so far as both were jointly liable, such liability was not affected by the question as to what separate transactions and sums went to produce it. Had the bank and the former grand treasurer jointly caused the entire loss, so that the bank and the estate would be jointly and severally liable for the whole shortage, then clearly both could be pursued until one

or both paid in full, and a partial satisfaction by one would be no defense to the other against liability for the entire unsatisfied balance. That is, if each were liable for all, then a twenty-five per cent payment by one would leave both responsible for the remaining seventy-five per cent. The peculiarity of the present situation is that while the estate was liable for all, the bank was liable for only $5399.85 and interest, and had the estate paid seventy-five per cent, the bank could be looked to for the remaining twenty-five per cent only, for the creditor can have but one satisfaction, though many judgments. Here the creditor in effect had a judgment against the estate for $16,359.99, and against the estate and the bank jointly for $6760, the amount due when the judgment was rendered. It may proceed against both only until the latter sum is realized, and then against the estate for the remainder. Indeed the bank was never a judgment debtor for any sum beyond $6760 and interest. Now it so happens that when the bank satisfied this judgment in full, leaving the estate liable for the remaining loss, the latter had paid a twenty-five per cent dividend, or one-fourth of the entire shortage, which left several thousand dollars still due the creditor. As between the bank and the creditor, the former has only done its duty, and the latter is not liable for any money had and received from the estate, because such money belongs to the creditor and the creditor is still the loser by some thousands of dollars on account of the defalcation. If the estate in paying the creditor the twenty-five per cent dividend used any of the bank's money, then possibly the bank may look to the estate therefor. (*Fort Scott v. Railroad Co.*, 66 Kan. 610, 72 Pac. 238.) But that problem need not be solved until it directly arises.

It is argued that when the estate paid the dividend it thereby paid twenty-five per cent of the bank's liability, which had already been paid in full, making one

3—94 KAN.

hundred twenty-five per cent received by the defendant, the dividend covering the entire shortage and of necessity every constituent element thereof, and being a payment by compulsion and not by choice must be applied *pro rata* in liquidation of all the constituent items. In *Washbon v. Bank,* 86 Kan. 468, 121 Pac. 515, it was sought to prevent the grand master from asserting against the bank a claim included in the one allowed by the probate court, and it was urged that by presenting the entire claim and having it allowed against the estate the grand master was estopped to pursue a remedy inconsistent with such proceeding; that having elected to treat the claim as a debt against the estate as for a conversion, he could not at the same time pursue the bank upon the theory of still owning the proceeds of the check there in controversy. It was held, however, that both remedies could be consistently pursued until there was one satisfaction. In *Sarbach v. Deposit Co.,* 87 Kan. 774, 125 Pac. 63, it was shown that the administratrix had collected about $32,799 with which to meet debts of over $76,000 and had asked an order of distribution among the undisputed claims, and had been directed to pay twenty-five per cent of all which had been allowed except that of the grand lodge which had been ordered to be held in abeyance until it could be determined how much could be recovered by the lodge in its suits against various banks and individuals. The district court on appeal directed the administratrix to pay without regard to the pendency of the cases referred to, and that order was affirmed by this court. It was there contended that the company should not be allowed to collect twenty-five per cent of its claims against the estate until it should appear whether it could collect more than seventy-five per cent from other parties sued, and that the other suits were for portions of the identical money which should have been in the hands of the defaulting grand treasurer. But it was said:

"We think the appellee has the same right to the

twenty-five per cent dividend as other creditors of the same class, and if, in any of the pending proceedings, any overplus should be recovered the creditor must account to the estate therefor, but until such contingency happens neither of the debtors who have participated in the wrongful diversion of the fund in question can require the claimant to stay proceedings until it is seen how much some other debtor may be compelled to pay." (p. 777.)

The present proceeding is one step still further in advance, but we think it is governed by the same rule. In paying the judgment against it the plaintiff only performed its duty towards the defendant, and only paid what it then owed the defendant. Upon such payment the account between the two parties was square. Their controversy was ended. The incident was closed. True, when this payment was made the estate had paid the defendant towards its liability a sum amounting to one-fourth its total, but this still left three-fourths of such total due, save as diminished by the portion paid by the bank, and should the defendant now be compelled to return one-fourth of the amount formerly paid to it by the bank, such one-fourth would be a complete loss to the defendant and a like gain to the bank.

The plaintiff cites authorities holding that the term "dividend" means a *pro rata* application to every item of a claim, but the situations presented by these cases are generally those of secured and unsecured claims, and plaintiff contends that the bank is in the position of a guarantor or surety for the defalcation, and that the rule announced in these decisions applies. We think the difficulty with this proposition is that while the bank was in a sense in the position of guarantor or surety it came into that position by virtue of a tort committed jointly by itself and the former grand treasurer, and is held for the shortage not on account of a suretyship or guaranty voluntarily entered into,

but as a matter of law on account of its own wrong, for which the injured party has a right to call upon the bank to respond in full, regardless of what other wrongs the estate may answer for. Sureties are favorites of the law, and guarantors may at least stand upon their contract rights, but joint wrongdoers are in another class and not entitled to the same consideration. But counsel say this very defendant in *Washbon v. Bank,* 87 Kan. 698, 125 Pac. 17, took the position of having waived the tort and can not now be heard to invoke the doctrine of joint wrongdoing. It was there held that the action was not one for relief on the ground of fraud but one on an implied contract to repay money fraudulently received. In the opinion it was said:

"The bank must have known that Sarbach had no authority to loan these trust funds to any person or for any purpose. It participated in the fraudulent use of the moneys for its own profit. . . . The bank also knew that the purpose of the loan was to enable Sarbach to perpetrate a fraud upon the grand lodge." (p. 710.)

Counsel say that the effect of the bank's knowledge of the source of the money taken was to raise a promise by implication where it had failed to make such promise (to repay) expressly, and that "with that the tort spent its force." We are unable to agree with this contention but are impelled to conclude that the bank is not in a situation to force a return by the defendant of anything received from the estate.

It is urged that in case of an involuntary payment like that of the dividend here involved, the option of the creditor to apply it to the unsecured portion of the debt does not exist, but that a *pro rata* application to all the debts must be made. The rule, however, is said to be that usually the application by the court will in cases of voluntary payment be *pro rata,* "but in some jurisdictions involuntary payments insufficient to pay all claims are applied by the court so as to pay the unsecured rather than the secured claims." (30 Cyc.

1228.)  Again: "At common law, however, and in most of the states in this country, while there are cases laying down the rule that the creditor should be preferred, yet the general rule is that the court will make the application in such a manner, in view of all the circumstances of the case, as is most in accord with justice and equity and will best protect and maintain the rights of both debtor and creditor. . . . It is generally held that the court will apply a payment . . . to an unsecured debt in preference to one for which the creditor is secured, to a debt for which the security is most precarious where the creditor holds more than one security." (30 Cyc. 1240-1243.)  Without deciding the exact rule of the application of payments which should govern in this case it is sufficient to say that the plaintiff can not rightfully complain of the application actually made. (See *Medical Co. v. Hamm*, 89 Kan. 138, 130 Pac. 650.)

No question is made by the defendant touching the right to recover an involuntary payment were such recovery otherwise proper, hence the correctness of plaintiff's position in this respect appears to be conceded.

The allegations of the petition that the judgment was made up of separate items which formed a part of the defalcation have not been overlooked, but they are not deemed sufficient, if true, to require the application of the dividend contended for by the plaintiff.

Having carefully considered each point raised we find no error in the record, and the judgment is therefore affirmed.