FIRST NATIONAL BANK OF FAIRBURY, APPELLEE, V. HERMAN E. FAIRCHILD, APPELLANT.

FILED APRIL 25, 1929. No. 26433.

426

*E. A. Wunder* and *Perry & Van Pelt,* for appellant.

*Denney & Denney* and *John C. Hartigan, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, THOMPSON and DAY, JJ., and HASTINGS and REDICK, District Judges.

HASTINGS, District Judge.

This is an action in assumpsit brought by the First National Bank of Fairbury, Nebraska, against Herman E. Fairchild, Arthur R. Nichols and Henry L. Duval, as defendants, to recover for money alleged to have been loaned at their request and used for their benefit. The defendant Nichols was not served, and the defendant Duval died before service was had upon him. The case proceeded to trial against Fairchild, and at the close of the evidence,

on motion of plaintiff, a verdict was directed in favor of the bank for the full amount claimed. Judgment was entered on the verdict, and the defendant Fairchild appeals.

Of the grounds urged for a reversal the only one that need be considered is: Did the trial court commit error in directing a verdict?

The facts disclosed by the record pertinent to a determination of the question involved show that the defendant Nichols was the cashier of the Farmers & Merchants National Bank of Fairbury, Nebraska, the defendant Fairchild was vice-president, and the defendant Duval was one of its directors. On the 28th day of October, 1922, the defendant Fairchild, at the request of Nichols, signed a promissory note for $8,100 with Nichols and Duval, due in six months from date, bearing 8 per cent. interest, payable to the Burnes National Bank of St. Joseph, Missouri. The note, so far as Fairchild was concerned, was given for the accommodation of the Farmers & Merchants National Bank. The note was delivered to that bank and discounted by it with the Burnes National Bank, for which it received credit in its account in the Burnes National Bank for the face of the note less the discount. The Farmers & Merchants National Bank had, prior to the discounting of said note, been carrying an account with the Burnes National Bank, and continued to carry such account until its failure in March, 1924.

The makers of notes discounted by the Farmers & Merchants National Bank with the Burnes National Bank were not notified by that bank of the maturity of said notes, but notice thereof was given to the Farmers & Merchants National Bank, and under arrangements between said banks, if not paid when they became due, the notes were charged to the account of the Farmers & Merchants National Bank and returned to that bank.

About the time the note given by Nichols, Duval and Fairchild became due, Nichols made arrangements with the plaintiff bank to carry the indebtedness evidenced by that

note. Pursuant to said arrangement on the 28th day of April, 1923, Nichols delivered or caused to be delivered to plaintiff bank a note for $8,100 purporting to be signed by Fairchild and Duval and due in six months from date. On the same day the plaintiff bank issued a draft payable to the Farmers & Merchants National Bank which was indorsed by it and forwarded to the Burnes National Bank. The Farmers & Merchants National Bank was given credit in its account in the Burnes National Bank for the amount thereof. The note signed by Fairchild, Nichols and Duval to the Burnes National Bank was, on April 30, charged to the account of the Farmers & Merchants National Bank and returned to that bank and by Nichols turned over to the plaintiff bank. It appears that at the time the Farmers & Merchants National Bank was given the $8,100 draft, and at the time the Burnes National Bank received it, there were sufficient funds in its account without the draft to have paid the note given by Nichols, Duval and Fairchild, and if the draft had not been sent the note would have been charged to that account.

The note to plaintiff bank purporting to have been signed by Fairchild and Duval and delivered at the time the $8,100 draft was issued by plaintiff bank was renewed on July 29, October 27, 1923, and January 29, 1924, and the interest paid, together with $100 of the principal; such payment of interest and payment on the principal being made by either Nichols or the Farmers & Merchants National Bank. The name of Fairchild was forged on all of said notes and he denies having had any knowledge of their execution and delivery or the payments made thereon. In March, 1924, the Farmers & Merchants National Bank failed, and in April following, about the time the last note became due, the president of plaintiff bank, in a conversation had with Fairchild, learned that Fairchild claimed he had not signed the note in 1923 or any of the renewals thereof, and denied liability thereon. This is the first notice that Fairchild appears to have had that plaintiff bank claimed to have had any note signed by him.

There is a conflict in the evidence as to the authority of Nichols to make the arrangements with the plaintiff for the carrying of the indebtedness owing to the Burnes National Bank by it. Nichols testified that, about the time the note given by Nichols, Duval and Fairchild to the Burnes National Bank became due, he had a talk with Fairchild and told him:

"We have been notified by the Burnes National Bank that our $8,100 note was maturing, and that the First National Bank of Fairbury had been taking some of the outstanding paper of borrowers of the bank and I thought they would take this $8,100 note for us. He said that will be fine if they will; they might as well have the paper as the Burnes National; glad to let them have it."

Fairchild denies that he ever had any such conversation with Nichols or that he ever knew that any arrangement had been made with the plaintiff bank to carry said indebtedness, and denies that Nichols had any authority whatsoever to make any such arrangement.

Under this state of facts it is the contention of counsel for the defendant that the defendant Fairchild, having denied that he ever authorized or consented to Nichols making any arrangements with the plaintiff bank to take up and carry their indebtedness to the Burnes National Bank, the question of such authority or consent should have been submitted to the jury.

It is manifest, if the authority or consent of Fairchild was necessary to authorize Nichols to make the arrangement with plaintiff bank to pay and carry the indebtedness of Nichols, Duval and Fairchild owing the Burnes National Bank, that the trial court erred in directing a verdict for plaintiff.

The fact that they signed the note as joint and several makers to the Burnes National Bank established no mutual agency between them whereby any one of them, without the authority or consent of the others, might enter into an agreement with plaintiff bank to pay and carry such indebtedness and thereby render the others liable. *Mayberry*

*v. Willoughby,* 5 Neb. 368; *Dwire v. Gentry,* 95 Neb. 150; *Hall v. Rogers,* 113 Neb. 290.

It is the contention of counsel for plaintiff that, even though such arrangements were made by Nichols with plaintiff bank without consent or authority from Fairchild, yet, as he received the benefit of it by the cancelation of his valid obligation, the law created a quasi contract and implied a promise to pay. While an action in assumpsit will lie upon the breach of an express contract or one implied in fact, there is also a large class of obligations to enforce which the action of general assumpsit is a well-established remedy. This class of obligations is known as quasi contracts, and the principle upon which they rest is equitable in its nature and derived from the civil law.

"In quasi contracts the obligation arises not from consent, as in the case of contracts, but from the law or natural equity. * * * The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. In this class of cases the notion of a contract is purely fictitious. There are none of the elements of a contract that are necessarily present. The intention of the parties in such case is entirely disregarded, while in cases of express and implied contracts in fact the intention is of the essence of the transaction. In the case of contracts the parties fix their terms and set the bounds upon their liability. As has been well said, in the case of contracts the agreement defines the duty, while in the latter class of cases the duty defines the contract." 2 R. C. L. 749, sec. 8.

See, also, *Board of Highway Commissioners v. Bloomington,* 253 Ill. 164, Ann. Cas. 1913A, 471; *Schaeffer v. Miller,* 41 Mont. 417, 137 Am. St. Rep. 746; *Lawson, Ex'r, v. Lawson,* 16 Grat. (Va.) 230, 80 Am. Dec. 702; *Estate of Devries v. Hawkins,* 70 Neb. 656.

Under the facts in this case, we are unable to agree with the contention of counsel for plaintiff that plaintiff is entitled to recover upon a quasi contract. The plaintiff bank was not compelled to pay the note upon which the defend-

ant Fairchild was joint maker. The money was not paid by plaintiff bank under such circumstances that any option was allowed such defendant to adopt or decline the benefit. If he had been allowed such option and adopted the benefit he would be liable to repay the money expended, but if he declined the benefit he would not be liable. The money was expended under such circumstances that he could not help accepting the benefit; in fact, he was bound to accept it. He had no opportunity of exercising any option as to whether he would accept or reject the benefit and as to him the payment by plaintiff bank must be regarded as entirely voluntary.

If we assume, as we must for the determination of the question involved, that Fairchild did not consent or authorize the advancement of the money and the payment by plaintiff bank to the Burnes National Bank, we have an unsolicited payment of the debt for which he was jointly liable with his comakers, and it is not enough to create a liability against him that he had the benefit thereof by reason of it being expended in the payment of the debt. Under such facts the payment by plaintiff bank of the joint debt of Nichols, Duval and Fairchild was, so far as the defendant Fairchild was concerned, a voluntary payment, and the law does not permit it to thus make itself a creditor of Fairchild. If any other rule prevailed it would put every person "who owed a debt at the mercy of an enemy, who might choose to make himself his creditor without his consent or authority, for the purpose of harassing and distressing him; and to deprive him of defenses which he might have had to a suit by his original creditor, of which he would not be able to avail himself against such newly created liability." 2 R. C. L. 776, sec. 33. Also, *Turner v. Egerton*, 1 Gill & J. (Md.) 430, 19 Am. Dec. 235; *Kelley v. Lindsey*, 7 Gray (Mass.) 287; *Spooner v. Thompson*, 48 Vt. 259.

By the payment of the joint note to the Burnes National Bank the defendant Fairchild was deprived of a valuable right, in that the undisputed evidence shows that he

signed the note to the Burnes National Bank for the accommodation of the Farmers & Merchants National Bank; that there was sufficient money in the account of the Farmers & Merchants National Bank in the Burnes National Bank at the time the note became due to have paid it, leaving out of consideration the $8,100 draft of the plaintiff bank that went into that account. The evidence is also undisputed that it would have been paid out of that account if the draft for $8,100 had not been received. That being true, the defendant Fairchild's obligation would have been paid and canceled by the bank for whose accomodation he signed the note and he relieved from any further liability. Under such circumstances he received no such benefit by the payment of the note by money advanced by plaintiff bank as would imply a promise to repay.

In the case of *Boyer v. Richardson*, 52 Neb. 156, this court held: "Money paid to a third person in discharge of the debt of another cannot be recovered back when the payment was made voluntarily, without any legal obligation on the payor, without any duress, compulsion, or deceit, without any previous request from the debtor, and without any subsequent promise of repayment."

In the opinion in that case at page 161 it is said by Judge Irvine: "It is elementary law that in order to recover money paid to the use of another, where the party paying was under no obligation so to do, the payment must have been moved by a previous request from the party to whose use the money was paid. In some cases a previous request will be implied, as where the money was obtained by duress either of person or property, or by deceit, or where there has been a subsequent express promise to repay the money, as was the case in *Stuht v. Sweesy*, 48 Neb. 767. But where the payment is entirely voluntary—where there is no subsequent promise to repay—a previous request must be proved."

Under the rule announced in that case, there being no evidence of a ratification by defendant Fairchild of Nichols' acts or of any promise, express or implied, on his

part to repay, it was necessary for the plaintiff bank to prove a request by either Fairchild personally or some one authorized by him, for the advancement of the money and the payment of the note to the Burnes National Bank.

In this connection it is urged by counsel for plaintiff that under the issues presented by the pleadings there were no controverted facts to submit to the jury. Plaintiff in its petition alleged generally: "Defendants and each of them are indebted to the plaintiff for that on the 28th day of April, 1923, the plaintiff loaned to the defendants at their request and for their use and benefit the sum of $8,100 which defendants agreed to repay, together with interest at 8 per cent. per annum."

The answer was a general denial. It is contended that such denial does not put in issue the authority of Nichols to obtain the money to pay the obligation of all three defendants, nor that the money was used to pay the valid obligation of all three. In support of his contention counsel cites *Smith v. Wigton,* 35 Neb. 460, which was an action to recover for money had and received. It was held in that case that a general denial only put in issue the receipt of the money. This is not an action for money had and received, but rather an action for money advanced and paid for the use and benefit of defendants at their request and with an agreement to repay. All of these matters were put in issue by the general denial. The burden was upon the plaintiff to prove a request by the defendant Fairchild, or some one having authority from him to make it, for the money advanced, or a subsequent ratification or promise to repay. This view is supported by authority. *Ball v. Beaumont,* 66 Neb. 56; 5 C. J. 1405, sec. 75; 2 Bancroft, Code Pleading, 1373, sec. 921; *Shearer v. Shearer,* 84 Colo. 234.

It follows from what has been said that the case should have been submitted to the jury and error was committed by the trial court in directing a verdict for the plaintiff.

We do not deem it necessary to discuss the other alleged errors assigned by the defendant. We have examined the same and find no error prejudicial to the defendant.

For the reasons pointed out, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

EBERLY, J., dissents.