L. L. LAVELLEUR, Appellee, v. JOSEPH NUGENT, Appellant.

**PRINCIPAL AND AGENT:** Evidence. Agency cannot be proven
1  by the declarations of the agent.

**APPEAL AND ERROR:** Reception of Evidence—Prejudicial Error—
2  Agent's Declarations as to Agency. Admission of declarations of
an agent to third parties that he was agent was reversible error,
where the fact of the agency was in issue, and the court in-
structed the jury that the testimony was of probative force on
that issue.

*Appeal from Polk District Court.*—HUBERT UTTERBACK,
Judge.                .

MAY 19, 1919.

ACTION to recover the purchase price of certain horses.
Verdict and judgment for the plaintiff. Defendant appeals.
—*Reversed.*

*Walter L. Stewart* and *Robert J. Bannister,* for appel-
lant.

*Parsons & Mills* and *Wilkinson & Wilkinson,* for ap-
pellee.

GAYNOR, J.—Plaintiff is a farmer. The defendant is a
buyer of horses in the city of Des Moines, and, at the times
hereinafter stated, was purchasing horses for the British
government, to be used in the British army. He operated
sale and inspection barns and yards. In these barns and
yards, horses were kept for inspection by government of-
ficers, who, on inspection, either accepted or rejected. On
the 1st day of September, 1917, plaintiff owned 21 head of
horses, kept by him on his farm in Madison County. On
that date, one R. Burnett came to plaintiff's place, for the
purpose of buying these horses, either for himself or as
agent for defendant. The plaintiff was not at home, but his

son, a lad of 15 years, was there. Burnett purchased the horses from the son for $3,295, and gave to the son in payment therefor a draft, in the following form and words:

"No. 8072                    Des Moines, Iowa, 1-9-17.

"Joe Nugent, Dealer in Horses and Mules.

"Pay to the order of L. L. Lavalleur, P. O. Winterset,

"Mules ..............:...................,.....$3,295.00

"For 21 horses for shipment to

"Joe Nugent, Des Moines, Iowa.

"To Joe Nugent, Des Moines, Iowa.

"Payable through Iowa Loan & Trust Co., Des Moines, Iowa."

The horses were taken by Burnett and shipped, with other horses, to the defendant. They reached defendant and were taken into the defendant's yards. The draft above set out was presented for payment, and payment refused. Thereafter, the defendant caused a letter to be written to the plaintiff, in substance notifying him that the horses were there in his possession; that he would better come after them; that they were not the kind; that they did not suit, and they were being held at plaintiff's expense; that defendant would not buy them; and that, if the plaintiff had any interest in them, he would better look after them. Thereafter, the plaintiff came to see the defendant, and demanded payment for the horses, and the defendant told him that he would not pay for them, and that Burnett had bought them on his own account, and it was up to Burnett to settle for them.

On the 10th day of September, 1917, this action was begun to recover of the defendant the contract price of the horses. In the original petition, the plaintiff claimed that he sold and delivered the horses to defendant, and that defendant had agreed to pay him therefor $3,295; that he had demanded payment of defendant, and payment was refused.

Defendant filed a general denial and counterclaim, but the counterclaim will not be considered, because it was withdrawn from the jury.

The plaintiff amended his petition on the first day of the trial, alleging that, since the beginning of the suit and the filing of the answer, the defendant had sold all the horses in controversy for the sum of $3,615, and has ever since retained the proceeds of the sale; that the sale was made on the 29th day of October, 1917; that defendant retained possession of the horses until that time, and has ever since retained the proceeds of the sale; and that he is estopped to deny that he purchased the horses, or that the party with whom the transaction was had was not authorized to bind him in the purchase of the horses.

Upon these issues, the cause was tried to a jury, and a verdict returned for the plaintiff for $3,375.62. Judgment being entered on this verdict, defendant appeals.

The claim of the plaintiff is that the defendant purchased these horses for $3,295; that the purchase was actually made by one R. Burnett from plaintiff's son at plaintiff's farm in Madison County, and were shipped by Burnett to the defendant at Des Moines, and received by defendant. The contention of plaintiff is that Burnett was the agent of the defendant; acted for the defendant in making the purchase; that he had authority from the defendant to make the purchase for the defendant, and issued the draft, hereinbefore set out, in payment; or that, if Burnett was not the agent of the defendant at the time he made the purchase, the defendant, with notice of the facts of the purchase, received and sold the horses, and, therefore, ratified the action of Burnett in making the purchase for him.

Taking all the facts and circumstances together, there is a fair controversy in the record as to whether Burnett was acting as agent for the defendant at the time he pur-

chased, and as to whether the defendant ratified his action in making the purchase, to such an extent as to be bound thereby.

One question was material for the consideration of the jury, and, if found in plaintiff's favor, was conclusive of defendant's liability, and that is: Was Burnett the agent of the defendant, and acting for the defendant in the purchase of these horses? Was he directly or impliedly authorized to purchase these horses for and on account of the defendant? Did he purchase them for the defendant, as defendant's agent, and ship them to the defendant as such agent?

In the absence of any fraud, a purchase made by one authorized to make the purchase—one authorized as agent to act for the other in making the purchase—binds his principal. If the agency of Burnett was established by competent evidence, the verdict must have been for the plaintiff.

The complaint of the defendant is that improper evidence was offered and admitted to establish this fact, over the objection of the defendant. Several witnesses were called by the plaintiff, who, over the objection of the defendant, were permitted to say that Burnett told them that he was the agent of the defendant, and acting for the defendant in purchasing certain horses sold by them to Burnett; that Burnett told them that he was the agent of the defendant, and buying horses for and on behalf of the defendant. One Tilton was called, and was asked this question: "Do you recollect selling horses to Mr. Nugent through Burnett, last September?" He answered, "Yes." He was then asked this question: "What, if anything, did Mr. Burnett say with reference to who he was buying the horses for?" Proper objection made and overruled. He answered: "He was buying for Mr. Nugent; buying on commission."

One Gifford was permitted to testify, over the objection of the defendant:

"I know Burnett. I don't know Nugent. I sold Burnett eight head of mules for $1,300. He paid for them with a draft similar to the one given to the plaintiff. It was honored and paid." He was then asked this question: "What did Burnett say, if anything, to you with reference as to who he was buying them for? A. He said he was buying them for Nugent."

One Guiberson, who stated that Burnett had bought certain horses from him, and that he was paid by sight draft similar to the one given the plaintiff, was permitted to answer the following question: "Did he say who he was buying horses for? A. Joe Nugent."

Burnett was called, and testified:

"I was buying horses for myself on the 1st day of September. I paid for them myself, and shipped them to Mr. Nugent. I was never out buying. I have shipped horses through Nugent for about two years. I have money in Nugent's possession."

Nugent testified that Burnett was not his agent; that he never authorized him to buy any horses for him. He testified:

"Burnett goes out and buys horses and sells them at my place like any other shipper. Goes, buys, and fetches horses in there and sells them to me. He showed me the 21 horses, but I refused to buy them. He asked me if I would buy them, and I told him I would not. I never had anyone buy horses for me. They buy for themselves and send them in to me, and I buy if they suit me. If they come up to the standard and are worth the money, I buy the horses from them. Mr. Burnett never bought a horse in his life for me."

There was a clear controversy as to Burnett's agency. It is fundamental that agency cannot be proven by the

declaration of the agent. Evidence of statements made by Burnett that he was the agent of defendant and acting for him in the buying of horses was, therefore, wholly incompetent.

1. PRINCIPAL AND AGENT: evidence.

It may have influenced the jury in reaching a verdict. The jury may have founded its verdict upon this testimony. We cannot say. The evidence should not have gone to the jury.

The court, in its instructions to the jury, said:

"You have a right to take into consideration the acts of Burnett in making the purchase of the horses of the plaintiff, and of others in that community made at and about the same time; his declarations with reference to his agency, if any, made to the plaintiff, the son of the plaintiff, and *to others in similar transactions* in the purchase of horses at and about

2. APPEAL AND ERROR: reception of evidence: prejudicial error: agent's declarations as to agency.

said time; the payment of sight drafts drawn upon Nugent." Thus the jury's especial attention was called to this testimony as having probative force in determining one of the real issues in controversy between the parties.

We think the court was in error, both in admitting the evidence and in its instructions to the jury. Before the jury was instructed, the plaintiff especially asked the court to instruct the jury that statements of Burnett's relative to his being the agent of the defendant, Joe Nugent, should not be considered; that they must find the agency established by other testimony than these declarations of the putative agent's. This was refused by the court. There may be evidence to justify the verdict with this evidence excluded, but that is for the jury to say, and not for us. The jury was permitted to consider incompetent evidence in making its findings, and for this error, the case must be reversed.

Other matters are considered which may not arise on the second trial, and we do not discuss them.

For the error pointed out, the case is—*Reversed.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.