·ROBERTS v. RUMLEY ET AL.

1. **Principal and Agent:** SPECIAL AGENCY. An agreement made by a special agent, beyond the scope of the agency, will not bind the principal; and it is incumbent upon the party to ascertain the extent of the powers of the agent with whom he deals.

2. ——: ——: RATIFICATION. The principal is not bound by the unauthorized agreements of a special agent, of which he had no knowledge when he accepted the benefits of the contract made within the scope of the agency, unless he ratifies the same.

*Appeal from Hardin Circuit Court.*

SATURDAY, APRIL 22.

THIS is an action for an injunction to restrain the selling of certain property, levied upon under an execution, and for a decree canceling the judgment and subrogating the plaintiff to the extent of one hundred dollars, to the rights of ·the mortgagees in a certain mortgage in the petition described. The court granted the relief prayed. The defendants appeal. The material facts are stated in the opinion.

*E. W. Eastman,* for appellant.

*W. V. Allen,* for appellee.

DAY, J.—In 1872, one J. H. Hoffman, and the plaintiff, W. H. Roberts, executed to the defendants, M. & J. Rumley, three promissory notes, the makers being in form, both principals, but, as between themselves, Roberts being a surety. In 1874 said Hoffman executed to said Rumleys two promissory notes.

On the 25th day of February, 1876, the Rumleys recovered judgment against Hoffman on said two notes for $747.50 and costs, and attorney's fees. And on the 3d day of March, 1876, the said Rumleys recovered judgment against Hoffman and Roberts on said three notes for $611.25 and

costs.   Huff & Reed, Esqrs., were attorneys for the plaintiffs in the procurement of these judgments.   Upon the last judgment an execution issued, which was levied upon a stock of drugs of W. H. Roberts, the present plaintiff.   Hoffman was insolvent.   In order to secure a release of his property from the execution, Roberts proposed to Huff & Reed that he would procure Hoffman to execute a mortgage upon his homestead to secure the judgment.   Huff & Reed declined to entertain the proposition unless Hoffman would make the mortgage to secure both judgments.   Pending this proposition, Huff & Reed, on the 10th day of February, 1878, wrote to W. E. Higgins, Esqr., the attorney of the Rumleys, through whom the notes were sent for collection, and who, as well as the Rumleys, resided at Laporte, Indiana, a letter as follows:

"We have had execution issued on the judgment of M. & J. Rumley v. J. Hoffman, and one of the judgments on which there is no security, amounting to the sum of $934.15, and the one in which W. H. Roberts is joint judgment-defendant, amounting to the sum of $718.93, and we presume, as between him and Hoffman, is surety.   The real estate of Hoffman, which is in the name of his wife, is encumbered for about the sum of $7,000, by mortgage, and in acres, 400, or about that, and he has nothing else whatever that we can find reachable by execution.   This land no doubt is his, but in the name of his wife fraudulently, and could be reached by creditor's bill, but then your clients would be compelled to redeem from the mortgage by the payment of this sum, or about the sum named, and we apprehend that would hardly pay, while Roberts has a small drug store only, that can be reached by execution, and the whole contents would not pay more than $200 with costs, the sheriff thinks.   Now, Hoffman says with a little time he will give additional security with Roberts, by mortgage on their homestead at Ackley, in the name of his daughter, worth, he claims, $2,000; we think from $1,500 to $1,800, the title of which is good, as we have examined the same.   On this proposition, he wants to pay in installments

of one, two, and three years. Perhaps, we could get him to do a little better than that, but that is his proposition. This, we think, would give pretty good security on the judgments and will secure the payment of the same. Now, by execution, we can make but a mere nominal sum and cost, with no prospect of making any additional sum on the judgment. Inasmuch, therefore, as you have no security on the large judgment, and but little on the other, do you not think we had better make some such an arrangement with him so as to secure on this homestead, which cannot be reached at all by execution? It is our judgment that this proposition by all means ought to be accepted and the security taken, and we recommend its acceptance at once. Of course, we would let the judgments stand as they now are, and take the mortgage to secure the payment of the judgments, so there would be no change in the form of the claims. Please answer at once and let us know if we shall accept of this proposition, and take the security, as we believe it will insure the full payment of both these judgments. We have examined Hoffman's matters and they are as above stated."

Higgins exhibited this letter to his clients, the Rumleys, and upon consultation with them, on the 13th day of February, 1878, wrote to Huff & Reed as follows:

"Yours, without date, received last night. Upon the representations therein, and relying upon your judgment, that it is the best thing we can do, I will consent to the J. Hoffman proposition, with the further provision, that Hoffman pay, say $100 now, to apply on fees, you keeping fifty dollars, and send me fifty dollars. Then divide the balance of the claims with three equal installments, one, two, and three years, with interest at ten per cent annually, and take good security. Figure up the judgment, interest, and costs, and make that sum the new principal, which must bear interest as stated. Then put in the mortgage a provision that a failure to pay the first installment, or any installment, the whole debt shall come due at our option, and if he puts us to expense of foreclosing, he

must pay expenses, including attorney's fees, and all will be right if this is done. Then send the new papers to me."

On March 14, 1878, J. H. Hoffman, with his wife, and his daughter, Caroline, executed to the Rumleys, a mortgage on two lots in the town of Ackley, which property was occupied by the Hoffmans as their homestead, and the title of which was in said Caroline. The mortgage recited said two judgments, and that they amounted to $1,778.36, besides accrued costs on the executions, and was conditioned to pay $889.18 of said sum on the 14th day of October, 1879, and $889.18 on the 14th day of April, 1881, with interest on both payments at the rate of ten per cent per annum, payable annually, and all costs, and provides that if the property shall be sold for taxes, or there shall be a failure to pay installment or interest, the whole debt shall become due. On the 14th day of March, 1878, Roberts executed and delivered a paper signed by himself as follows: "At my request Julius Hoffman, giving this day, by himself, wife, and daughter, Caroline Hoffman, a mortgage on lots one and two, block ninety-seven, Ackley, * * * * I consent to the giving of said mortgage, and the extension of time for payment of said judgment, for which said mortgage is given in security, that and another judgment, and waive all right to object to the extension of time as provided in said mortgage." On the 23d day of March, 1878, Roberts paid to Huff & Reed on said judgment $100, and obtained from them a paper signed by them as attorneys of M. & J. Rumley, as follows:

"Received of W. H. Roberts, as surety, the sum of $100, which is to be applied on a judgment in the Circuit Court, in a case wherein M. & J. Rumley are the plaintiffs, and Julius Hoffman and W. H. Roberts are defendants. And to the extent of $100 a mortgage security given to said M. & J. Rumley by Caroline Hoffman, Julius Hoffman, and Ernestine Hoffman, to secure said judgment, is assigned to said W. H. Roberts as security for the said sum of $100 he has paid as surety."

The property having been sold for taxes and no interest having been paid, defendants Rumleys procured a decree of foreclosure of the mortgage, October 16, 1879.

The decree provided that the proceeds of the property should be applied to the payment of taxes and costs, and redemption from tax sale, and then *pro rata* to each judgment, if insufficient to satisfy both. The property was levied upon and advertised. Two days before the sale Roberts caused a notice to be served upon the sheriff, and upon E. W. Eastman, Esqr., attorney for the plaintiffs in the foreclosure proceeding, directing them to apply the proceeds of said property, first to satisfy and extinguish the judgment against Hoffman & Roberts. The property was sold to defendants Rumleys for $1,000, and the proceeds were applied as in the decree of foreclosure provided. Afterward, an execution issued on the balance of the judgment against Hoffman & Roberts. The plaintiff thereupon commenced this suit to have the money applied as he directed, and for a decree enjoining the execution and canceling the judgment. The plaintiff also asks that he be subrogated to the rights of the mortgagees to the extent of $100, on account of the payment of that amount on the judgment. The petition alleges that about the 14th of March, 1878, plaintiff entered into an oral contract with the defendants, M. and J. Rumley, by the terms of which he was to procure the Hoffmans to execute the mortgage above referred to, and the Rumleys were to release the levy on plaintiff's property, and to extend the time of payment of said payments, and were to apply the proceeds arising from said mortgaged property to the payment of the judgment on which plaintiff was liable, and that by mistake in drawing said mortgage, the stipulation that the proceeds of the property should be first applied to the payment of the judgment, upon which plaintiff was liable as a surety, was omitted, and the same omission, for the same reason, was made in the stipulation signed by plaintiff waiving the release by reason of the extension of time.

Whatever agreement was entered into between the parties, was made between plaintiff and Huff & Reed. Huff & Reed,

1. PRINCIPAL and agent: special agency.

as attorneys, simply for the collection of the notes, had no authority to release the levy upon plaintiff's property and take the mortgage in question, extending the time of payment of one-half of the judgment for one year and seven months, and of the other half for three years and one month. Whatever authority Huff & Reed had in the premises was specially conferred by the letter of Higgins above set out. They were special agents, for a particular purpose, with prescribed and limited powers. They were authorized to secure both judgments, the one upon which plaintiff was not liable as a surety, as well as the one upon which he was so liable. They were not authorized to take a security which should be primarily applied to, and perhaps exhausted upon, the judgment which was already secured. If Huff & Reed made the agreement which the plaintiff alleges, they transcended their powers as agents, and their agreement does not bind their principals. It was incumbent upon the plaintiff to ascertain the scope and extent of the powers of the agents with whom he dealt. See Story on Agency, sections 126–133, and notes.

It is said, however, that, even if Huff and Reed transcended their agency, the defendants have adopted and ratified their

2. ——: ——: ratification.

acts. It does not appear, however, that the defendants ever had any intimation of the agreement which the plaintiff now alleges to exist, and which he is seeking to enforce, until the commencement of this suit. They could not have ratified and adopted an act about which they knew nothing. It is further claimed that the defendants cannot avail themselves of the benefits of the acts of their agents, without also being bound by whatever may be prejudicial to them. This principle applies to the doctrine of agency, with some limitations and qualifications. If the agents had incorporated in the mortgage a provision that the proceeds of the mortgaged property should first be applied

to the satisfaction of the judgment upon which Roberts was surety, the defendants could not have accepted the benefits of the mortgage without being bound by this condition, even although the agents had no authority to agree to such condition. So, too, if the defendants had known that their agents had agreed to incorporate such a condition in the mortgage, and that it was omitted by mistake, they would, probably, on acceptance of the mortgage, have been bound by the condition. But to hold that the principal is bound by agreements between the special agent and the person with whom he contracts, not authorized by the agent's appointment, and of which he had no knowledge when he accepted the benefits of the contract, would be entirely subversive of the whole doctrine of special agency, and instead of requiring the person dealing with the agent to ascertain, at his peril, that the agent has kept within his special authority, would require the principal to inquire, at his peril, whether the agent had gone beyond it. The cases of *Eadie, Guilford & Co. v. Ashbaugh*, 44 Iowa, 519, and *Beidman v. Goodell*, 56 Iowa, 592, are not inconsistent with this view. The majority opinion in *Eadie, Guilford & Co. v. Ashbaugh*, is grounded upon the fact that Allen, who made the sale in question, was not the agent of the plaintiffs, and had no authority to sell the machine with a warranty, but that he assumed to act as agent and sold the machine with a warranty. In *Beidman v. Goodell*, also, it appears from the opinion that the person by whose acts the plaintiff was bound by ratification, acted entirely without authority. Where a person assumes without authority to act as the agent of another, the principal cannot be bound at all by the act unless he ratify the same. In such cases he cannot adopt the act in part, and repudiate it in part. "Where a contract is an entirety and is wholly unauthorized, and the principal takes the benefit of it, he must take it with the obligations which make a part of it." *Beidman v. Goodell, supra*, and cases cited; *Davenport S. F. & Loan Association v. The North American Fire Insurance*

*Company*, 16 Iowa, 74. This principle, however, does not apply when the agent is duly appointed and vested with special or limited powers. "Whatever he does in such case beyond his authority, is void, unless ratified, and that, without affecting the validity of what was done within the scope of his powers." *Davenport S. F. & L. Association v. N. A. Fire Ins. Co., supra.*

The doctrines which we have above announced apply to the claim of the plaintiff that he should be subrogated to the rights of the mortgagee, and have a first lien upon the mortgaged premises for the one hundred dollars which he paid upon the judgment. Huff and Reed had no authority to assign the mortgage to the plaintiff, and such assignment does not bind the defendants. The plaintiff, in our opinion, is not entitled to the relief asked, and his petition should have been dismissed.

REVERSED.