A. F. GROELTZ v. ARMSTRONG REAL ESTATE COMPANY, Appellant.

Articles of Incorporation: POWERS OF PRESIDENT TO CONTRACT. Where the articles of incorporation provide that the affairs of the corporation shall be conducted by its directors who shall elect from their own number a president whose duties shall be prescribed by by-laws, and no by-laws conferring power on the president to make contracts have been adopted, he has no power, acting alone, to contract for the corporation.

SAME: *Ratification.* Where the directors of a corporation give a third person an option on certain property, and its president has authority in pursuance thereof to execute a conveyance, but he, without authority, makes a new arrangement with a third party, agreeing to pay him a commission for selling the property, and to surrender the amount paid for the option, and the corporation, without notice that the sale is the result of a new arrangement, and not of the option, accepts the purchase price it will not be bound by the unauthorized agreement to pay the commission etc., the acceptance of the price not being a ratification thereof.

*Construction of Power is for Court.* The question as to the authority of the president of a corporation to contract, where depending on the construction of the articles of incorporation and not on evidence of custom or course of business, is for the court and not for the jury.

*Appeal from Cedar Rapids Superior Court.*—HON. T. M. GIBERSON, Judge.

FRIDAY, FEBRUARY 7, 1902.

ACTION to recover $500 as commission for the sale of real estate, and $25, the amount paid by plaintiff to defendant to secure an option on the same real estate, which it is alleged defendant failed and refused to return to plaintiff as agreed. Judgment on verdict for plaintiff, from which defendant appeals.—*Reversed.*

*Heins & Heins* for appellant.

*Jamison & Smyth* for appellee.

McCLAIN, J.—On the 28th of June, 1899, the defendant, through one Mather, acting as its authorized agent, in consideration of the payment of $25, gave to plaintiff the option of buying the real estate in question for $12,000 at any time before July 15th following. Two days before the expiration of this option, one N. G. Armstrong, president of defendant company, was by plaintiff introduced to one Miller, and negotiations were

had between the two by which a sale of the property to Miller for $12,000 was effected. The proceeds of this sale were received by defendant. Plaintiff claims that this sale to Miller was not in pursuance of the option which plaintiff had on the property (for in that event plaintiff certainly could have had no claim for commission), but in pursuance of a new contract between himself and Armstrong, by which the option was surrendered, and plaintiff became the agent of defendant for the sale of the premises to Miller. There was evidence for plaintiff tending to show that Armstrong agreed to pay plaintiff $500 commission for the sale of the property under this new arrangement, and to return to him the $25 which he had previously paid to defendant for the option. For defendant it is contended that Armstrong had no authority as president to make any such contract. For plaintiff, in response to this contention by defendant, it is urged that even if Armstrong, as president, had no authority to contract for the payment of the commission, still the acceptance by defendant of the purchase price from Miller in pursuance of the sale to him was a ratification of Armstrong's unauthorized acts as president. There is no evidence as to the authority of Armstrong, as the president of the defendant company, to act for it in the sale of real estate, or in the employment of an agent for that purpose, except that found in defendant's articles of incorporation, which provide that "the affairs of this corporation shall be conducted and its business managed by not less than five, nor more than ten, directors, who shall constitute its board of directors," and shall be elected annually by the stockholders, and that "such directors shall elect from their own number * * * a president, vice president, secretary, and treasurer, whose duties shall be prescribed by the by-laws; and the board of directors may, from time to time, appoint or elect such other officers and agents as they may think proper." So far as appears from the record, no by-laws conferring power upon the president to make

contracts for the corporation were ever adopted. As a general proposition, we think it is true that "the president of a corporation has no power to buy, sell, or contract for the corporation, nor to control its property, funds, or management." 2 Cook, Corporations (4th Ed.) section 716. And see 4 Thompson, Corporations, sections 4613, 4617; *Templin v. Railway Co.,* 73 Iowa, 548. However, whatever may be his presumed power in general, we think that there can be no controversy as to the rule that, where the general power to make contracts for and manage the business of the corporation is conferred upon the board of directors, that power cannot be exercised by the president alone; and that is this case, as will appear from the provisions of the articles above quoted, which are the only provisions on the subject. There is no evidence of any custom or usage on the part of the defendant recognizing greater powers in the president than those provided for in the articles, nor of any holding out of the president to the public as having any such extended authority. The president did not, therefore, have the power to bind the corporation by the contract which it is claimed he made with plaintiff.

The remaining question is whether the receipt from Miller of the consideration for the sale to him constituted a ratification by the corporation of its president's alleged agreement to pay a commission to plaintiff. It is well settled that the acceptance of the benefits of a contract made by an agent acting without authority will bind the principal to the terms and conditions of the contract, but the acceptance of the benefit of an authorized act will not bind the principal to an agreement made by the agent as to the same subject-matter which was beyond the scope of his authority, and of which the principal, when accepting the benefit of the authorized act, had no knowledge. *Roberts v. Rumely,* 58 Iowa, 301. In order that the principal may be bound by ratification of an agreement of the agent

made without authority, the principal must have knowledge of the unauthorized act. *Eggleston v. Mason,* 84 Iowa, 630. In this case the original option granted to plaintiff was expressly authorized by the directors, and the president had authority, therefore, in pursuance of this option, to transfer the property to any one designated by plaintiff within the period of the option, on payment of the agreed price. There is no evidence that when the purchase price was received from Miller, and distributed by the directors by way of dividend, as was done, they had any information that the sale was the result of a new transaction, and not of the contract of option given to plaintiff. Therefore they were not bound by the unauthorized agreement to pay plaintiff a commission, and return to him the $25 which he had paid for the option. We think we might safely go further, and say that the ratification of the new sale to Miller, without knowledge of any collateral agreement to pay a commission, would not bind the defendant to carry out the collateral and independent contract to pay a commission to plaintiff. The sale and the agreement to pay a commission were wholly independent contracts, and while the sale might have been effected as the result of plaintiff's efforts, induced by the unauthorized agreement to pay him a commission, the ratification of the sale by the acceptance of the benefits thereof would not bind the corporation to the agreement to pay plaintiff for the services rendered in bringing about such sale. A very pertinent authority is the case of *Market Co. v. Jackson,* 102 Pa. 269, in which a similar question was involved.

The instructions of the court authorized recovery by plaintiff if the jury should find that N. G. Armstrong made a new parol contract to sell the property to Miller, and to pay $500 commission to plaintiff, and repay him the $25 which he had paid for his option, provided they found that

said Armstrong had authority to make such sale and contract, or that the sale was consummated and the money received by defendant. The question of the authority of the president, inasmuch as it depended on the construction of the articles, and not upon evidence of any custom or course of business, was not for the jury; and, as we have above pointed out, the receipt of the consideration for the sale would not constitute a ratification of the independent agreement to pay a commission. ' The court, therefore, erred in the instructions given, and the judgment must be REVERSED.