WEERT HUISMANN, Appellee, v. GERTRUDE ALTHOFF et al., Appellants.

**PRINCIPAL AND AGENT:** Authority of Agent—Termination by 1 **Death.** Principle reaffirmed that the authority of an agent terminates with the death of the principal.

**PRINCIPAL AND AGENT:** Authority of Agent—Implied Authority. 2 Principle reaffirmed that a bank has no authority to receive payment of a note from the naked fact that the note is payable at said bank, especially in the absence of the note, and before maturity.

PRINCIPAL AND AGENT: Authority of Agent—Declarations of Agent.
3 Agency may not be established by the declarations of the alleged agent.

PRINCIPAL AND AGENT: Authority of Agent—Collection of Interest.
4 Authority in an agent to receive *interest* accruing on a promissory note does not embrace authority to receive the *principal*.

PRINCIPAL AND AGENT: Authority of Agent—Nonimplied Author-
5 ity. The naked showing that the payee of a promissory note received from a bank or from an officer thereof a payment on the note of a third party creates no presumption that the payee had expressly or impliedly authorized the bank or its official to receive said payment on said payee's behalf.

PRINCIPAL AND AGENT: Authority of Agent—Authority Assumed—
6 Ratification. The act of the payee of a promissory note in receiving and accepting a payment on a note, from one who had no authority to collect it on payee's behalf, does not constitute a ratification of the act of such assumed agent in receiving an additional payment, when payee had no knowledge of such additional payment and no knowledge of such assumed agency.

Headnote 1: 2 C. J. p. 546. Headnote 2: 2 C. J. pp. 622, 624; 7 C. J. p. 597. Headnote 3: 2 C. J. p. 935. Headnote 4: 2 C. J. p. 621. Headnote 5: 7 C. J. p. 597 (Anno.) Headnote 6: 2 C. J. p. 476.

*Appeal from Lyon District Court.*—WILLIAM HUTCHINSON, Judge.

JUNE 21, 1926.

Action to cancel a mortgage upon real estate. There was a cross-petition, asking the foreclosure of the mortgage. The opinion states the facts. From a decree for plaintiff, the defendants appeal.—*Reversed.*

*Fisher & Riter,* for appellants.

*Riniker & Thomas,* for appellee.

VERMILION, J.—On March 1, 1915, the appellee, Weert Huismann, and his wife executed the mortgage in question, to secure a note for $13,500, due March 1, 1920, payable to the order of William Althoff, at the First National Bank of Ellsworth, Minnesota. The note represented a part of the purchase

price of the mortgaged premises, a farm in Lyon County, Iowa, purchased from Althoff by Huismann. William Althoff, the payee of the note, died October 15, 1915, and the appellant Kate Althoff, his widow, and the beneficiary under his will, became the owner of the note and mortgage. Appellant and her husband moved from Ellsworth to Tintah, Minnesota, in 1914 or 1915.

The note bears indorsements showing the payment thereon of $5,000 on March 29, 1919, and $3,300 on November 11, 1919. There is no dispute over these payments, and it is conceded that the $3,300 credit represented Liberty bonds, accepted at par. There is also no dispute that the $5,000 was paid through one C. A. Bird, or the First National Bank of Ellsworth, and that the Liberty bonds were turned over to the bank or Bird by appellee, and later delivered to the son of appellant for her.

It is the contention of appellee that, at the time the $5,000 was paid and the Liberty bonds turned over to the bank, he also gave to Bird or the bank sufficient money to pay the remainder of the principal and the interest due on the note. There is no claim that the note was then in the possession of the bank or Bird. The exact date of this transaction is not certainly fixed by the testimony on behalf of appellee, further than that it was in 1919.

On December 14, 1921, appellee paid to appellant $922.30 interest on the mortgage debt. He claims that this was paid under a mistake, and, in addition to the cancellation of the mortgage, asked to recover the amount so paid. The full relief asked was granted.

C. A. Bird was, until sometime in January, 1919, cashier of the First National Bank of Ellsworth, and after that, occupied a room in the rear part of the bank building, and engaged in the real estate business. He had also been engaged in that business while cashier of the bank, and had acted for William Althoff in selling the farm in question to appellee. Much is said in the record and in argument about the relation of Bird to the bank. We regard the question as quite immaterial, in the view we take of the case.

The case turns upon whether appellee made the payment in question to either Bird or the bank as the agent, or purported agent, of appellant; and, if so, whether the one to whom such payment was so made was the agent of appellant to receive pay-

ment of the note, or whether appellant had, by her words, acts, or conduct, so clothed such alleged agent with apparent authority to receive payment as that appellee, as a reasonably prudent man, was justified in making the payment without the note's being in the hands of the alleged agent. *Wolford v. Young*, 105 Iowa 512; *Bissell v. Spring*, 179 Iowa 1005; *McCullough v. Reynolds*, 181 Iowa 1089; *Sioux City C. L. Co. v. Lovrien*, 198 Iowa 296.

I. Taking up first the question of agency, we think there is no proof of actual or apparent authority on the part of either Bird or the bank to receive payment of the note as the agent of

1. PRINCIPAL AND AGENT: authority of agent: termination by death.

appellant. Any agency of Bird for William Althoff, the payee of the note, growing out of the sale of the land or otherwise, terminated on the death of the latter. *Darr v. Darr*, 59 Iowa 81.

The note was payable at the bank, but that alone did not create an agency in the bank to receive payment of the note,

2. PRINCIPAL AND AGENT: authority of agent: implied authority.

especially in the absence of the note and before maturity. *Bank of Montreal v. Ingerson*, 105 Iowa 349; *Keene Five Cents Sav. Bank v. Archer*, 109 Iowa 419.

There is not a word of testimony tending to show that express authority was conferred upon Bird or the bank by appellant to receive payment of the note. Such authority could not

3. PRINCIPAL AND AGENT: authority of agent: declarations of agent.

be shown by the declarations of Bird, as testified to by appellee and his son Klaus. *Lavelleur v. Nugent*, 186 Iowa 234. Not only does Bird's testimony fail to establish any agency on the part of himself or the bank, but he expressly denies the existence of such relation.

The only transaction with the bank or Bird in which appellant is shown to have had any part, directly or indirectly, or through any person acting for her, prior to the payment in

4. PRINCIPAL AND AGENT: authority of agent: collection of interest.

question, was the collection of interest coupons, which were paid by appellee at the bank. The authority of an agent to receive the interest on a note does not authorize one to pay him the principal. *Security Company v. Graybeal,* 85 Iowa 543; *Klindt v. Higgins*, 95 Iowa 529; *Kucher v. Scott*, 96 Wash. 317 (165 Pac. 82). Moreover, the evidence shows that the coupons were sent to the Ellsworth bank, not by the appellant, but by a bank at Tintah, to which

they appear to have been given for collection. No direction by appellant that this should be done, or even knowledge on her part that it had been done, was shown.

The appellant received the $5,000 payment and the Liberty bonds. This amount was paid, and the bonds turned over to Bird or the bank, according to the claim of appellee, in the same transaction in which the payment in dispute was made. Aside from the testimony as to the declarations of Bird, there is no evidence of any conversation, correspondence, or transaction with, or on behalf of, appellant concerning this payment, prior to its being made. Tony Althoff, appellant's son, testified that, before they moved from Ellsworth, there was an understanding that appellee might pay any sum on the note at any time. This was before the death of the payee of the note. The most that can be said of the payment of the $5,000 is that appellant received it from Bird or the bank.

5. PRINCIPAL AND AGENT: authority of agent: non-implied authority.

In this situation, the doctrine contended for by appellee, that a principal must ratify or reject in its entirety the act of one assuming to act as his agent, and cannot ratify the advantageous part and reject the other, has no application. In the absence of any knowledge to the contrary,—and none was shown, —appellant had certainly as much right to assume that the one sending the money was acting as the agent of the appellee, the debtor, as that he had assumed, without authority, to represent her in collecting it.

Furthermore, the appellant accepted only what was due her, in any event, and what appellee was, in any event, ultimately bound to pay, and had a right to then pay. The acceptance of this, although received from one who had, without authority, assumed to act for her, did not amount to a ratification of the unauthorized act of the one from whom it was received, in accepting a further sum, when she had not only no knowledge of the unauthorized act, but no knowledge of the assumed agency. *Roberts v. Rumley,* 58 Iowa 301; *Groeltz v. Armstrong Real Estate Co.,* 115 Iowa 602; *Bristol Sav. Bank v. Judd,* 116 Iowa 26; *McIntosh & Cathro v. Penney,* 190 Iowa 194.

6. PRINCIPAL AND AGENT: authority of agent: authority assumed: ratification.

The evidence shows that the bonds were not accepted as of the date they were turned over to Bird or the bank, but on

November 20, 1919, and then by appellant's son in person. Tony Althoff testified that, after the receipt of the $5,000, about March 29, 1919, they received some correspondence relative to an additional payment in government bonds, and after that, he came to Ellsworth, and, after some talk about the bonds, he accepted them.   Bird testified:

"I had written to the Althoffs regarding these Liberty bonds, and they would not accept them at their face value, but, on coming down in person and talking with Mr. Huismann, they agreed to take them, and this deal was then made."

He testified that he wrote to the Althoffs at the request of the Huismanns.  The testimony of appellee and his son is contradictory of this only in respect to the declarations of Bird, and that he wrote appellant at their request.  The son testified that the bonds were delivered to Althoff in November, and it is undisputed that the amount for which they were taken was credited on the note as of the date of this delivery.  There is not only no ratification here, but, on the contrary, a clear notice to appellee that Bird did not have such authority as appellee testified he claimed to have.  There is no suggestion in the evidence that appellee then insisted that the bonds should be credited as of the date of their delivery to Bird, as was his undoubted right if Bird, with authority, had previously accepted them as payment; but, on the contrary, appellee acquiesced in the credit as made, and as of the date when appellant actually received the bonds.

Appellee relies upon the familiar principle that, where one of two innocent parties must suffer for the act of a third, the one who made the loss possible must bear it.  In the absence of evidence of any prior acts or declarations on the part of appellant whereby she held out Bird or the bank as her agent to receive payment of the note, the doctrine can afford no comfort to appellee.  If he paid the money to one who had no actual or apparent authority to receive it for appellant, his own act made the loss possible.

II.   But, if it should be conceded that either the bank or Bird had apparent authority, by reason of any acts done by appellant, to receive payment in the absence of the note, we are clearly of the opinion that the evidence fails to show that the claimed payment of the note in full was made by appellee to

either Bird or the bank, as appellant's agent, or that appellee so understood at the time.

The substance of the testimony on behalf of appellee, that of himself and his son Klaus, was that, at some time prior to November, 1919, Bird suggested that the mortgagee might be willing to accept payment of the mortgage before due, at a discount; that appellee said he might pay the mortgage if Liberty bonds would be accepted to the amount of $3,300; that Bird later informed them that the bonds would be accepted; and that the bonds were delivered to Bird at the bank, and the balance of the principal and interest due on the mortgage was paid to Bird. Neither of these witnesses is very explicit as to the details of the transaction, or when it occurred, or how the payment was made. The appellee testified:

"I settled the whole amount in 1919. I don't know exactly what time it was. * * * I believe it was in the summer that I settled with them. I don't exactly know what time we did that, —December I believe. Q. After that in December? A. I believe it was, yes, no—yes, in December—it was in February— I don't know exactly what time it was."

He further testified:

"My money was laying there in the bank, all of it, and I took my bonds in, and so everything was there. I had kept my bonds at the house. I handed them over to them in the bank there, and I don't know what they did with them. I don't know whether Althoff got them that day or not. We gave them a check. We do not have those checks. The checks were paid, and put with our papers. Everything was all done that day."

Klaus, the son, testified that the transaction was sometime in March, 1919. He said:

"I saw the payment made at the time the bonds were delivered. Q. Do you recall what the amount was? A. Well, the bonds, the amount was $8,300, and I think $675 interest, if I recall. I am not positive. The total amount was $13,500 on the mortgage, with $675 interest then, and that was extra. The bonds were turned over to Mr. Bird or the bank. The balance of the payment was made the first of March. The bonds were left in the bank until November. The check for the balance was drawn up and left in the bank there. The money was supposed to be delivered to Althoff as soon as the release was drawn up.

Mr. Bird said he would turn $5,000 over to Althoff, and the balance, he says, 'I will leave right here in the bank until the satisfaction of release comes.' ''

Bird, as a witness for appellant, testified, in substance, that, early in 1919, he had borrowed $5,000 of the appellee, and executed his note payable to appellee for that amount, with the understanding that the amount so owed by him would be used by appellee to pay the balance due on the mortgage; that he had subsequently encountered financial difficulties, and had been unable to pay the note; that the note had been left with the bank for safe-keeping. He is corroborated by Rohlk, the cashier of the bank, who testified that he saw the note and put it away in the bank at the time. The bank's records show payment by the bank of a check on appellee's account for $5,000 on January 22, 1919, and there is in evidence a deposit slip showing a deposit to Bird's account on the same day of a check of appellee's for $5,000. The appellee and his son denied that he loaned Bird $5,000, or that he received Bird's note for that amount; but they did not deny the execution and delivery of the check.

It is practically conceded, or shown by uncontradicted testimony, that appellee, his son Klaus, Tony Althoff, representing appellant, and Bird met on November 20, 1919, and that at that time Bird indorsed on the note in suit the credits now appearing thereon, and that Tony Althoff then received the $3,300 of Liberty bonds. The note was brought there by Tony Althoff. There is no claim that appellee then demanded the surrender of the note and mortgage, or that the indorsements should show the payment of the note in full. Klaus Huismann testified concerning this meeting:

"* * * and Tony Althoff came down, and it was at the bank then, and Tony Althoff took those bonds and put them in his coat pocket; and then Mr. Bird says, 'Now we will go to Rock Rapids to the attorneys over there, and have this satisfaction of release drawn up, and I will hold this $5,200 here till you take that release home and have your mother sign it and return it to the bank here.' ''

Tony Althoff testified that at that meeting he agreed to take the bonds; that the indorsements were made on the notes by Bird, and further:

"I heard some talk between Mr. Huismann and Mr. Bird

about the payment of the balance. They figured up the amount to date. Q. The amount still due? A. There was an agreement made there that Bird was to allow interest on that. Q. Allow him interest on that balance? A. Yes, sir. Q. And you then understood Mr. Bird was keeping the balance? A. Yes, sir.''

The fact that, on November 20, 1919, in appellee's presence, the note was credited with the two payments of $5,000 and $3,300 only, and that he then made no demand for further credit or the surrender of his note, is clearly inconsistent with his claim that the note had been paid in full months before. The explanation offered by the son Klaus, that Bird or the bank was to hold the balance until a release of the mortgage was procured, does not avail. If the money was put in the hands of Bird or the bank by appellee, to be paid to appellant only when the release was procured, this was for the benefit of the appellee,—not the appellant. An agency is created when one is authorized by another to act in some respect for him. *Duhigg v. Waterloo Gasoline Engine Co.*, 189 Iowa 547. This is, of course, elementary. If the money was being held for appellee, the holder was his agent, to pay it out as directed. It was not paid to appellant, or, what would be the same thing, to her agent; for it was being withheld from her, and was in the hands of one who held it for the appellee.

It is equally impossible to reconcile the admitted payment of interest on the note in December, 1921, with the claim that the note was fully paid in 1919. Both appellee and his son testified that this payment was made on the advice of attorneys whom they had consulted.

There is some plausibility to Bird's account of the transaction: that he borrowed the $5,000 from appellee, to be repaid when the latter should require the money to pay appellant. He testified that he was to pay appellee 6 per cent interest, and that appellee's note drew but 5 per cent. But whether we accept that as the true explanation of the transaction or not, we are clearly of the opinion that the evidence fails to establish that appellee made, or intended to make, payment of the balance due on the note, to either Bird or the bank, as the agent of appellant.

It follows that appellee was not entitled to the relief prayed,

and that appellant is entitled to decree foreclosing the mortgage, as prayed in the cross-petition.—*Reversed.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.