C. B. Chismore, Plaintiff, Harvey Chismore, Administrator, Substituted Plaintiff, Appellee, v. Marion Savings Bank, Defendant, Appellant.

No. 43181.

June 19, 1936.

Rehearing Denied September 25, 1936.

Chas. J. Haas, for appellant.

George C. Claassen, for appellee.

Stiger, J.—In 1920 the original plaintiff C. B. Chismore

executed to the defendant bank a $2,000 note secured by a mortgage on 40 acres in Linn County, and a $7,000 note secured by a mortgage on 335 acres in Jones County.

In November 1924, the bank commenced foreclosure proceedings on each mortgage.

On December 22, 1924, the bank purchased the 40 acres at execution sale for the full amount of the judgment and costs and obtained a sheriff's deed to this tract on April 22, 1926, and on January 28, 1925, the bank purchased the Jones County land at execution sale for $6,500 leaving a deficiency judgment of $1,097.96. The bank obtained sheriff's deed to Jones County land March 5, 1926.

Under executions issued on the deficiency judgment the bank, in satisfaction thereof, obtained sheriff's deeds to 80 acres in Linn County, and to properties in Central City and Coggon, Iowa, on September 17, 1926.

The plaintiff claims that on June 11, 1926, at which time the bank had title to the Linn County 40 acres and the Jones County land and certificates of sale to the other three properties, he entered into an oral contract with defendant bank through its cashier, H. F. Lockwood, for the purchase of the five tracts of real estate for a sum of money equal to the amount that would have been owing the bank on the judgments in foreclosure on the date of the contract but for the sales of real estate in satisfaction thereof, with interest at six per cent from the date of the agreement; that plaintiff was to pay under said contract during the year of 1926 as much as he reasonably could but not less than $3,000 in cash and acceptable securities; the balance of the purchase price was to be paid and secured by a first mortgage on the Linn County 40 acres and the Jones County 335 acres, due in five years at six per cent interest.

The plaintiff further alleges that he paid on the purchase price during the year of 1926, $1,350.67 by draft; $1,336 evidenced by two notes of Harry and Ray Chismore, one for $800 and one for $536 which were accepted by the bank as cash; on November 28, $260 cash; on December 4, 1926, $500; taxes on land $142, total cash payments $3,588.67; that defendant in part performance of the contract conveyed to plaintiff the 40 acres on June 12, 1927, and the 80 acres on February 28, 1927; that in January 1927, he made a demand upon the bank for the conveyance to him of the Coggon and Central City properties and

the Jones County 335 acres, offering to execute his notes and mortgages thereon for the balance of the purchase price; that defendant refused the demand and has, by selling said three tracts to third parties placed it beyond its power to convey to the plaintiff; that on June 12, 1926, the Jones County land was worth $16,750, the Coggon land was worth $2,500 and the Central City property $1,500; that by reason of the breach of contract and the retention of the cash purchase price by the defendant he has been damaged in the sum of $13,871.44 with interest at six per cent from June 12, 1926.

The defendant admits the foreclosure of the mortgages and the obtaining of sheriff's deeds to the five tracts of land in satisfaction of its judgments in foreclosure. The defendant denies the contract claimed by plaintiff, and alleges that it made separate contracts with the plaintiff for the 40 and 80 acre tracts; that on June 11, 1926, it sold the 40 acres to plaintiff for $2,465.47 and executed to the plaintiff a deed to said land on said date; that on December 11, 1926, it sold plaintiff the Linn County 80 acres for $981.20 subject to a mortgage thereon and conveyed the land to him on February 28, 1927. The defendant expressly denies it made any contract with the plaintiff other than the above two contracts and states that the payments made by plaintiff were made and received upon said specific sales of the two tracts of land. Defendant denies the value placed on the land by the plaintiff and avers that the market value of the several tracts was not greater than the amounts for which they were sold to defendant. Defendant further states that no officer of the bank was authorized to sell the real estate; that the alleged contract was not in writing and within the statute of frauds.

Plaintiff filed his reply to the answer asserting that all payments made by him were on the contract set out in his petition; that the defendant after learning of the claim of the plaintiff retained the benefits of the contract and brought suit on the notes paid by plaintiff to defendant on the contract and thereby ratified the transaction; that relying on the contract made June 11, 1926, the plaintiff did not redeem from sheriff's sale the Coggon and Central City properties and that defendant is now estopped to deny the contract made with Lockwood. Plaintiff further states in his reply that he made his contract with H. F. Lockwood, whom the defendant had placed in full charge of its

affairs as cashier; that Lockwood had conducted all transactions with plaintiff in connection with the foreclosures and executions and had had the general management of the bank in practically all of its affairs; that plaintiff believed in good faith that Lockwood had authority to make such contract; that Lockwood did have authority to make the contract, that the bank held Lockwood out as its general manager for the transaction of all its business including the sale of real estate and that at the time of the contract Lockwood was apparently in full management of the bank; that if Lockwood did not, in fact, have authority to make the contract claimed by the plaintiff that he was placed in a position where it lead the plaintiff to believe that he had such authority; that by reason of facts and circumstances contained in plaintiff's reply the defendant is estopped to deny the existence of authority in its agent Lockwood to make the contract.

At the close of all the evidence defendant's motion for directed verdict was overruled.

The jury returned a verdict for $10,784.76. Defendant's motion for a new trial and exceptions to the instructions were overruled and it appeals from the final judgment and all adverse rulings of the court.

The first question to be determined is, did the trial court err in overruling defendant's motion for a directed verdict?

Plaintiff contends that he was entitled to have the case submitted to the jury on the following propositions:

(1) That Lockwood had actual authority, that is, express or implied authority, to sell the five tracts to Chismore.

(2) That the bank clothed Lockwood with apparent authority and is estopped from denying his authority to make the contract.

(3) That the bank ratified the contract by retaining the benefits.

Assuming the contract for the five tracts was not authorized by the bank, we find no evidence of its ratification for the reasons hereinafter given.

The evidence discloses no apparent authority given Lockwood by the bank. Apparent authority, as between the principal and third persons must always be determined by the acts of the principal, and not those of the agent. The authority must have been actually apparent to the third person who must have dealt with the agent in reliance thereon in good faith and in the ex-

ercise of reasonable prudence. Anderson v. Patten, 157 Iowa 23, 137 N. W. 1050; Engelke v. Drager, 213 Iowa 598, 239 N. W. 569.

In Dispatch Printing Co. v. National Bank, 115 Minn. 157, 132 N. W. 2, 4, it was said:

"The apparent power of the agent is to be determined by the acts of the principal and not by the acts of the agent. All of the elements of estoppel must be present. There must be conduct calculated to mislead, and it must be under circumstances which justify the claim that the principal should have expected that the representation would be relied and acted upon in good faith to the injury of the innocent party." See, also, 2 C. J., pages 574, 575.

The plaintiff does not claim that he relied on any act of the bank prior to the date of his alleged contract that apparently clothed Lockwood with power to sell the real estate, and there is no evidence of any such act on the part of the bank.

We must now determine whether or not there was sufficient evidence of express or implied authority from the bank to Lockwood to sell the five tracts to Chismore.

Code section 9163 provides that the business and property of Savings Banks shall be managed by a board of directors.

Article No. 6 of the defendant's Articles of incorporation provides that the business and property of the corporation shall be managed and the powers vested and belonging to it shall be executed by the board of directors.

The authority to sell real estate did not come within the general duties of Lockwood as Cashier. Article No. 7 of the Articles of incorporation of the bank refers to the cashier as a subordinate agent and Article No. 6 provides that the business and property of the corporation shall be managed by the board of directors. Such authority must be found in actual power especially granted him by the bank.

Mr. Shumack, director of the bank, testified:

"Concerning the making of sales of real estate, and the custom and practice of the bank with reference thereto, you can see by our minutes that real estate was almost the major part of our transactions. We talked them over, and our real estate committee usually made a trip to investigate the real estate. No offi-

cer of the bank had any authority to contract for the sale of real estate or to sell real estate without the approval of the Board first attained. Those matters were always discussed by the members and if a proposition was submitted to one of the officers such as an offer for real estate, that was required to be submitted to the Board, then the Board acted to approve or disapprove the proposition. That has been the universal practice of the bank from the time I first became acquainted with it in an official capacity down to the present."

Mr. Lockwood who was a director of the bank, Mr. Isham and Mr. Kendall, directors, testified substantially the same as Mr. Shumack. All of the officers of the bank testified that no officer had any authority to sell real estate without first obtaining the authority of the Board. From the above testimony it is clear that the general practice and usage of the bank was that no officer had a right to sell real estate without the approval of the Board.

 Whether or not, however, there was sufficient evidence of authority to Lockwood to sell the particular land in question to Chismore to justify submission of the question to the jury must be determined from the following testimony. Mr. Isham testified on cross examination:

"One of the practices of the bank was to permit officers of the bank to make sales and report to the bank later for deeds. This was habitually done. Lockwood was cashier with all of the duties which ordinarily attended the office of cashier. In the spring of 1926, after the deed was obtained for the Jones County land and the 40 acres, the *Chismore land* came into discussion by the board. At the April meeting it was agreed that the real estate was to be sold and the officers were to find agents to sell it if they could. The officers were to get buyers and make deals for it if they could. Lockwood was an officer of the bank. Now after that agreement was made I and Lockwood, Mr. Kendall and Mr. Schultz went to look over the land."

After so testifying Mr. Isham further testified:

"Q. And you men had authority to sell *that* land did you? A. Yes, we had more authority than we had buyers.

"Q. Yes, I see, you had full authority to sell it if you could find a buyer? A. Yes sir.

"Q. Every one of you? A. Any one of us; we could submit our offer to the board.

"Q. Anyhow the officers had been authorized to sell it if they could find a buyer? A. Yes sir."

The witness further testified on cross examination:

"Lockwood and I helped to sell this piece of property near Coggon, it was sold by me and Lockwood and later reported to the Board. Neither of these pieces of property were placed in a real estate man's hands. We sold it for the best offer we could get."

On re-direct examination the witness testified:

"I said that I and Lockwood sold the Coggon property, but the business was transacted this way; we had a Board meeting and the Board says we are to get it sold if we can. Lockwood and I went up and we had this man Drexler on the string, and we did not get closed with him and I went up in a few days and *closed it up*. There was a matter of $25.00 between us. He had not made a proposition at the time Lockwood and I went up. I got a proposition from him later. I reported that to the Board. When I say I sold it, I mean I had conducted the active negotiations."

Mr. Kendall, a director, testified on direct examination:

"Assuming that the bank acquired title to the Jones County land about March 1926, I in company with Mr. Isham and Lockwood and Shumack went over to see the land in May or June. We went for the purpose of making an examination and determining the value of the property. * * * It is a part of my job as one of the appraising committee of the bank to appraise real estate and determine its value."

Mr. Lockwood testified:

"The policy of the bank is to get rid of their real estate as soon as it can. The policies of the bank is to get out of the real estate what they have in it."

Mr. Lockwood further testifies:

"After the April 14, 1926 meeting several trips were made to the Monticello (Jones County land) by officers of the bank.

I went over with them. One reason for going over to look at it was to determine how best to handle it and there were other reasons. We went for the purpose of arranging for its sale.''

Mr. Isham further testified with regard to trips to Jones County land in April to make arrangements for its sale:

''We determined $20.00 to $22.00 was about the value of the land.''

The minutes of the board of directors reveal the following entries: April 14, 1926, ''After a general discussion of the real estate items the officers were advised to communicate with parties at Monticello in regard to the value of the Chismore land, also if possible place same in an agent's hands for sale.'' May 9, 1926, ''The real estate held by the bank was generally discussed, also possibilities of disposing of the same.'' June 12, 1926, ''On motion the officers were authorized to execute deed to C. B. Chismore for 40 acres in Jackson Township.''

We are of the opinion that the direct admissions of Mr. Isham on cross examination together with the other evidence above set out justified the submission to the jury the question of actual authority to Lockwood to sell the five tracts to Chismore.

Defendant filed exceptions to certain instructions.

Instruction No. 7 reads as follows:

''You are instructed that the defendant bank was and is now a corporation operating a bank, and that it can act only through its officers, agents and directors, and that H. F. Lockwood, who was the cashier of the defendant bank in 1926, had no authority to sell the bank's real estate solely because he was cashier, without authority from the board of directors of said bank, but that such authority of the board of directors need not have been formally reduced to writing in the minutes of its meetings; it would be sufficient if the board of directors did so authorize Lockwood to make the sale and contract as alleged by the plaintiff as a result of an informal discussion and decision at one of its meetings.

''The alleged contract of Lockwood would not be binding on the bank unless you further find from a preponderance of the evidence before you that the defendant bank later ratified the alleged contract made by its cashier. If you find that it did ratify the contract, then although you find that the board had

not authorized its cashier, Lockwood, to make the contract in advance of the sale, the contract would, nevertheless be binding on the bank by what is, in law, designated as a ratification thereof."

This instruction is erroneous for the reason that there is no evidence of ratification by the bank of an unauthorized contract by Lockwood. Furthermore, the instruction is subject to the following criticism: The first paragraph tells the jury what was necessary to show actual authority in Lockwood. The first part of the second paragraph tells the jury that it must *further* find (after finding actual authority) that the bank later ratified the alleged contract. The question of ratification only applies to unauthorized contracts. This statement was no doubt inadvertently made by the trial court.

The court erred in giving instruction No. 10 which reads as follows:

"Plaintiff claims in his petition that he made an oral agreement with the defendant bank, through H. F. Lockwood, cashier of the bank, about the month of June, 1926, for the repurchase of all of the pieces of property enumerated in his petition, and that at that time the pieces of property named in this record as the Central City property and the Coggon property were still redeemable by him, and that he was prevented from redeeming them under the law in reliance upon his contract of repurchase which he claims he had with the bank.

"On this phase of the case you are instructed that under the law of Iowa the plaintiff had one year from the dates of sheriff's sale of the several properties sold by the bank in which to redeem each piece separately by paying therefor the amount which any such piece was sold for and bid in at by the defendant bank, plus the accrued interest at 8 per cent per annum from the dates of the sheriff's sales to the date of redemption, and if you find that the plaintiff made an agreement with Lockwood, cashier, about the month of June, 1926, substantially as claimed by him, and that he paid $3,000.00 or more of the purchase price of the properties under said alleged agreement, and if you should further find that plaintiff would and could have redeemed the Coggon property and the Central City property, or either of them, within the period allowed him for redemption thereof, but that he did not do so because he relied upon the

agreement of repurchase he had with the cashier, Lockwood, and that he sustained a loss by his failure to so redeem said pieces of property, or either of them, and if you further find that the Marion Savings Bank by its voluntary act had placed said H. F. Lockwood in such a position in connection with the bank as its agent that a person of ordinary prudence conversant with the business usages of the defendant bank and the nature of the particular business of said bank was justified in presuming that said Lockwood had authority on behalf of the bank to enter into the contract the plaintiff made for the purchase of the land, and that the plaintiff believed that Lockwood had authority to make the contract for the bank, and that Lockwood appeared to have full authority to enter into the contract which plaintiff claims was made with him, and you find that the plaintiff in good faith relied upon Lockwood's apparent authority to enter into said contract with him, then you are instructed that the defendant Marion Savings Bank, will be denied the right to claim that Lockwood, the cashier, had no authority to make the contract and the defendant bank would then be bound by the agreement made by Lockwood with the plaintiff for the reconveyance of said real estate.''

Mr. Chismore was permitted to testify that he would have redeemed the 80 acres and the Central City and Coggon properties if he had not relied on the contract and that he had enough money, or could have gotten enough money to make the redemption. Instruction No. 10 was in part based on this testimony. This evidence was not material to any issue in the case and was erroneously admitted. The plaintiff is suing for damages for failure to convey the three tracts and not for damages occasioned by his failure to redeem. If Lockwood had authority from the bank to make the contract, Chismore can recover full damages. If Lockwood did not have authority to bind the bank Chismore was not justified in relying on his arrangement with Lockwood and in failing to redeem. The fact that plaintiff believed Lockwood had authority is not sufficient. The general power to manage the business of the corporation was conferred upon the board of directors and such power could not be exercised by Lockwood alone and there is no evidence of any holding out of the cashier Lockwood as having authority to sell real estate or powers in addition to those he had as cashier. There is no evidence

that Chismore knew of any business usage of the bank that would justify him in presuming on June 12, 1926, that Lockwood had authority to sell real estate as above stated. As above stated there is no evidence of apparent authority to sell real estate in Lockwood. See Groeltz v. Armstrong Real Estate Co., 115 Iowa 602, 89 N. W. 21.

■■■ The court erred in giving instruction No. 11. In this instruction the court after stating the defense of the bank that the only contracts it made with Chismore were for the sale of the 40 acres and the 80 acres, states:

"You are instructed that if you find from a preponderance of the evidence that these two separate transactions were made between the bank and the plaintiff, and that the payments made by plaintiff were made by him thereon substantially as claimed by the defendant bank, and that the plaintiff did not buy back all of the property substantially as claimed by him in his petition on or about June 11, 1926, then you should find for the defendant and against the plaintiff."

The defendant pleaded a different contract, and what it claimed was the real contract with Chismore. This does not shift the burden of proof to the defendant. 13 C. J., page 737, sec. 875; Homire v. Rodgers, 74 Iowa 395, 37 N. W. 972; Sorenson v. Townsend, 77 Neb. 499, 109 N. W. 749. This instruction placed the burden on the defendant of establishing its defense and the error was not cured by the instruction placing the burden of proof on the plaintiff to establish his alleged contract.

■■■ The court erred in giving instruction No. 14. It reads as follows:

"The bank in its answer sets up that its cashier, H. F. Lockwood, had no authority to make the contract claimed by plaintiff to have been made with him.

"In this connection you are instructed that if you find from the preponderance of the evidence in this case that the plaintiff did make a contract with H. F. Lockwood, the cashier, substantially as alleged by him in his cause of action, and if you further find that plaintiff paid over to the defendant bank on the contract price for the conveyance of all of the real estate formerly his, which the bank had sold, up to $3,000.00, or in excess thereof, in moneys and promissory notes which the bank ac-

cepted in lieu of money, and if you further find that the bank obtained full knowledge that the plaintiff claimed he had a contract for the conveyance to him of all the parcels of real estate claimed in his cause of action, and that it had in its possession full information of the plaintiff's said claimed contract and agreement and had in its possession the information which the cashier possessed, and had in its possession the claim of the cashier that he made no such contract with the plaintiff, and if you find that thereafter the bank adopted the plaintiff's alleged contract and accepted payment and certain notes made by the plaintiff on his alleged contract with the cashier, and the defendant thereafter brought suit for the collection of any notes so taken as part payment, or a renewal thereof and collected the judgment, and kept the proceeds thereof and the cash paid it, and has failed to return the benefits it received from the plaintiff under said contract made between plaintiff and said Lockwood, and that the bank still retains the money and notes or the proceeds thereof, and has not offered to return the same, then you are instructed that the defendant bank thereby ratified the contract made between its cashier, H. F. Lockwood, and the plaintiff, and that such ratification relates back to the very time the contract was made. If you so find, then you are instructed that the defendant bank cannot be permitted to enjoy the fruits of the bargain without adopting all the instrumentalities employed in obtaining the contract, and it has ratified said contract and the defendant bank cannot now be heard to say that its cashier had no authority to make the contract, and a defense of want of authority on Lockwood's part to make the contract is then not available to the defendant bank.''

The bank first obtained knowledge of plaintiff's claim in October 1930 when notice of this damage suit was served, which was four years after the date of the contract June 12, 1926. All payments were made by the plaintiff during the year of 1926. The statement in this instruction "If you find that thereafter (after October 1930) the bank adopted the plaintiff's alleged contract and accepted payments and certain notes made by plaintiff (which were given in 1926)'' is confusing and might lead the jury to believe that acceptance of the purchase price by the bank in 1926 was a ratification of a contract that it first learned about in 1930.

This instruction No. 14 is based upon the plaintiff's contention that the bank ratified the contract after learning of plaintiff's claim in October 1930 by retaining the benefits of the contract, that is, the purchase price paid in 1926, and bringing suit on a note that was part of the purchase price. To constitute a ratification of an unauthorized contract the bank must have had full knowledge of the *facts* and of what had been done in its name and on its behalf by Lockwood. A knowledge of plaintiff's claim was not sufficient. When notice of plaintiff's suit was served on the defendant in 1930, Lockwood denied the claim. He had not told the bank about Chismore's claim because he insisted that there was no such contract.

The knowledge of the agent of an unauthorized contract is not imputed to the principal. The principal may assume until otherwise advised that his agent will act within the scope of his authority. 2 C. J., page 480, and pages 863 and 865. Haswell v. Standring, 152 Iowa 291, 132 N. W. 417, Ann. Cas. 1913B, 1326.

All of the officers of the bank including Lockwood testify that the only transaction with Chismore was the completed sales of the 40 and 80 acres.

In Town of Ansonia v. Cooper, 64 Conn. 536, 30 A. 760, 762, the court states:

"The acceptance of the results of an act with an intent to ratify and with full knowledge of all the material circumstances is a ratification."

In this case the bank cannot be said to have had full knowledge of all the material circumstances when its cashier flatly denied Chismore's claim. See, generally, 2 C. J. 476, sec. 93; Roberts v. Rumley, 58 Iowa 301, 12 N. W. 323; McIntosh & Cathro v. Penney, 190 Iowa 194, 180 N. W. 177.

2 C. J. 922, sec. 657. "Ratification of unauthorized act of an agent is not presumed, the presumption being against ratification of such an act in the absence of proof of intent to ratify."

2 C. J. 492, sec. 112. "Ratification is a matter of intention express or implied on the part of the principal. * * * It has been held that the principal's acts * * * must be such as are inconsistent with any other hypothesis than that he approved and intended to adopt what had been done in his name."

Ratification must be clear and express or be implied from

circumstances equally clear and express. Haswell v. Standring, supra.

There is no evidence that the bank intended to bring a suit on a purchase price note received under the contract claimed by Chismore, and thus ratify the contract. The bank had no knowledge of the material facts of such contract, Lockwood denied the making of the contract and the bank claimed the said note was paid on the purchase price received from Chismore under the sale of the 40-acre and 80-acre tracts.

The case of Eadie v. Ashbaugh, 44 Iowa 519, relied on by the appellee is not applicable to the facts of this case. The Eadie case is an authority for the proposition that the retention of the benefits of a transaction and a suit on a note received *as a part of the transaction* ratifies the entire contract including an unauthorized warranty. The retention of the benefits of one transaction, as in this case, does not ratify a separate and different transaction. See Groeltz v. Armstrong, supra; Roberts v. Rumley, supra; also Farrar & Wheeler v. Peterson, 52 Iowa 420, 3 N. W. 457.

Furthermore the bank had disposed of the three pieces to third parties prior to notice of plaintiff's claim.

2 C. J. page 496. ''There is no ratification if at the time it becomes known that the agent has exceeded his authority the principal has put it beyond his power to return or restore the benefits received.''

In Martin v. Hickman, 64 Ark. 217, 41 S. W. 852, 853, it was said:

''A principal will not be considered as having ratified an unauthorized act of his agent merely because he receives property and avails himself of the advantages derived from such act, when he did not learn that such agent had exceeded his authority until after he had sold the property and after the circumstances were such as to put it beyond his power to return or restore the property.'' See, also, 1 Elliott on Contracts, page 684. Pacific Bone, etc. Co. v. Bleakmore, 81 Cal. App. 659, 254 P. 618; Claflin v. Wilson, 51 Iowa 15, 50 N. W. 578.

It is error to submit to the jury a material fact of which there is no evidence. Seddon v. Richardson, 200 Iowa 763, 205 N. W. 307; Bank v. Anderson, 65 Iowa 692, 22 N. W. 929.

The court erred in submitting the question of ratification to the jury.

We have examined instruction No. 15 prescribing the measure of damages and find no error therein.

Because of the errors pointed out herein the case must be and is reversed.—Reversed.

DONEGAN, C. J., and ANDERSON, PARSONS, MITCHELL, and ALBERT, JJ., concur.