TED BROER, Appellant, v. DR. FENTON'S VIGORTONE COMPANY, Appellee.

No. 45946.

JUNE 16, 1942.

Lundy, Butler & Lundy, for appellant.

Donnelly, Lynch, Anderson & Lynch, for appellee.

OLIVER, J.—This is an action at law for damages for breach of warranty. The petition alleged plaintiff owned 83 hogs, 20

of which were afflicted with necro; that defendant's salesmen and representatives orally warranted its proprietary feeds and medicines would cure said disease; that relying thereon plaintiff purchased said remedies and the hogs were treated therewith; that thereafter most of the remaining hogs contracted necro, which caused the death of 50 hogs and the stunting of 28 others. The answer was a general denial. Trial to a jury resulted in a verdict for defendant. From the judgment thereon plaintiff prosecutes this appeal.

Veterinarians testified necro is a necrotic condition or thickening of the walls of the intestines. The disease is transmitted by hogs picking up the excreta of infected hogs. It is a disease of filth. The infection is around buildings and barn lots, in dust and dirt. The incubation period of the bacteria is about 10 to 15 days. Some effects of the disease are loss of appetite, emaciation, enteritis, scouring, and frequently death. There is no recognized cure for necro known to the veterinary profession. Cleanliness and sanitation are essential to its treatment. The infection may spread among a high or low percentage of the hogs, depending somewhat upon the virulence of the germ and the susceptibility of the animal.

Appellant was familiar with the disease. His pigs were dying from it. He testified the salesmen called at his place and told him, "Dr. Fenton's treatment and Vigortone will cure Necro. * * * we can cure that up for you * * *. If you will follow directions, I will guarantee results." Appellant also testified they told him he would lose some of the hogs already exhibiting symptoms of the disease. A salesman gave appellant an instruction sheet, showed him how to mix the remedies, and agreed to call every day or two to see that appellant was following the directions.

■ I. Most of the assignments of error have reference to the condition of the shed in which appellant placed and kept the hogs during the time he was feeding the remedies to them. Over appellant's objections, appellee was permitted to introduce evidence that the floor of this shed was covered with dust and dirt several inches deep so that the hogs moved around in clouds of dust; that it was an unsanitary, filthy, and improper place for hogs; that prior to the time the hogs were moved to the shed the

salesman instructed appellant to clean the cement floor and sprinkle it with oil for the purpose of disinfecting it and holding down the dust; that although the salesman, upon his subsequent calls at the farm, repeatedly protested and urged that the shed be cleaned, appellant failed to do so. Appellant himself, upon cross-examination, admitted his hired man might have told him the salesman had called to tell appellant he would lose pigs if he did not clean the shed.

The principal claim of error is that this was an affirmative defense which appellee was required to specifically plead, and that because appellee's answer was a general denial only, such evidence was inadmissible. In discussing this contention we will assume, without so deciding or intimating, that appellant's pleading and evidence of warranty to cure were sufficient to justify submission of that question to the jury.

Warranty has been defined as an express or implied agreement, collateral but annexed to or an incident to the agreement to transfer the title, by which the seller undertakes to vouch for the title, quality or condition of the thing sold. American Fruit Prod. Co. v. Davenport Vinegar & Pickling Works, 172 Iowa 683, 699, 154 N. W. 1031, 1036.

In this case the arrangement shown by the record contemplated the feeding of the remedies and care of the hogs by appellant. He was given instructions for doing this. It was practically undisputed that one of these instructions was that he remove the dust and filth from the hog house and oil the floor. According to his own testimony, the warranty was expressly conditioned upon his following the directions given him.

The burden was upon appellant to establish the warranty, the breach, and the damages. Among other things, he was required either to prove substantial compliance upon his part with his obligations upon which the warranty was conditioned, or to excuse any noncompliance therewith or show that the failure to cure was not due to any noncompliance. He was also required to prove that his loss resulted from the breach of warranty.

Peet Stock Rem. Co. v. Bruene, 210 Iowa 131, 230 N. W. 327; Tracy v. Liberty Oil Co., 208 Iowa 882, 226 N. W. 178; Oelwein Chem. Co. v. Baker, 204 Iowa 66, 214 N. W. 595; Denver Horse Importing Co. v. Schafer, 58 Colo. 376, 147 P. 367.

The offer of evidence tending to disprove any of the foregoing propositions was merely an attempt to negative something which the party claiming damages for breach of warranty was, in the first instance, required to prove to establish his case. Therefore, the court did not err in admitting the proffered evidence under the general denial. McKay v. Johnson, 108 Iowa 610, 79 N. W. 390; Swanson v. Allen, 108 Iowa 419, 79 N. W. 132.

■ II. Instructions 5 and 6 advised the jury there was no evidence of express authority to the salesmen authorizing or empowering them to bind appellee by the alleged oral warranty, but that the jury had the right to find, from various enumerated facts and circumstances and all other facts and circumstances shown in evidence which cast light upon the proposition, that the salesmen had authority to bind appellee by said warranty. Appellant predicates error upon the statement that there was no evidence of express authority on the part of the salesman to bind appellee by the alleged warranty.

Appellant also points out that (1) appellee accepted and retained the money paid by appellant for the remedies, and (2) some time after appellant commenced giving the remedies to his hogs one of appellee's veterinarians called at appellant's place and inspected the hogs and the shed in which they were kept. It is argued that these circumstances prove ratification by appellee of the acts of the salesmen in warranting the remedies.

Ratification of the acts of an agent by the acts or conduct of the principal is implied ratification. 2 C. J. S. 1092, section 47. Express ratification must be in the same form or mode as would be necessary to confer express authority to do the act in the first instance. 2 C. J. S. 1090, section 46.

In this case there was no evidence of either *express* authority or *express* ratification, and the statement in the instruction that there was no evidence of *express* authority was not erroneous.

■ The goods were purchased upon a written order, signed by appellant and the salesmen, which required appellee to ship the goods to appellant. It contained no reference to any warranty. Nor does it appear that appellee had knowledge of the alleged warranty. Ordinarily, for a ratification of an unauthorized act of an agent to be binding, the principal must have full

knowledge, at the time of ratification, of all the material facts and circumstances relating to the unauthorized act. 2 C. J. S. 1081, section 42; Chismore v. Marion Sav. Bk., 221 Iowa 1256, 1266, 268 N. W. 137, 142; Groeltz v. Armstrong Real Estate Co., 115 Iowa 602, 89 N. W. 21. In 2 Am. Jur. 184, section 229, the rule is stated as follows:

■ "Thus, the receipt of purchase money will not have the effect of a ratification of an unauthorized warranty unless received or retained with knowledge that the agent had given the warranty."

We conclude the evidence was insufficient to bind appellee upon the theory of ratification.

The other assignments of error have been considered. None of them calls for a reversal.—Affirmed.

All JUSTICES concur.